UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
STANACARD, LLC,                    :   Case No. 12-CV-_____

              Plaintiff,   :   **COMPLAINT**

-against-                          :

RUBARD, LLC D/B/A CENTMOBILE,
ALEKSANDR PALATKEVICH, ARTUR       :
ZAYTSEV & ALEXANDER DZERNEYKO,

              Defendants.  :
----------------------------------X

12 CIV 5176

RECEIVED JUL 02 2012 U.S.D.C. S.D.N.Y. CASHIERS

      Plaintiff Stanacard, LLC, by its attorneys, Krol & O'Connor, alleges as follows:

### JURISDICTION

      1.  This case arises under 35 U.S.C. §101 *et seq.* and 17 U.S.C. §101 *et seq.*

      2.  This Court has subject matter jurisdiction under 28 U.S.C. §§1331 & 1338(a) & (b) over, respectively, claims of patent infringement, copyright infringement and unfair competition, and under 28 U.S.C. §1367 over the related claims - arising under the laws of the States of New York and Delaware - of breach of contract, breach of fiduciary duty and duty of loyalty, conversion, unjust enrichment and specific performance.

      3.  Venue is proper in the Southern District of New York under 28 U.S.C. §§1391 & 1400 and the consensual choice of forum by the parties set forth in the non-disclosure agreements ("NDAs") executed by the parties.

## THE PARTIES

4. Plaintiff Stanacard, LLC, is a limited liability company organized under the laws of the State of Delaware with an office and principal place of business located at 424 West 33rd Street, New York, New York 10016.

5. Defendant Aleksandr Palatkevich is a resident of the Brooklyn, New York. From January 1, 2008, through August 13, 2010, Palatkevich was a member of Stanacard and held himself out as its Chief Technology Officer ("CTO") and a *de facto* employee. Stanacard remunerated Palatkevich for his services through his wholly-owned corporation, BPVN Technology, Inc. ("BPVN").

6. Defendant Artur Zaytsev is a resident of New York, New York. Zaytsev rendered services to Stanacard from September 2007 through November 2009 and held himself out as its Chief Financial Officer ("CFO") and a *de facto* employee. Stanacard remunerated him for his services through his wholly-owned corporation, anzFS, Inc. ("anzFS").

7. Defendant Rubard, LLC, is a Delaware limited liability company formed in December 2010. Upon information and belief, Rubard has an office at 345 Park Avenue, New York, New York, is owned and operated by Zaytsev and Palatkevich, and does business under the name of CentMobile. Upon information and belief, CentMobile is the former d/b/a of Omnitel Communictions Corporation, a New Jersey corporation formed in 2008.

8. Upon information and belief, defendant Alexander Dzerneyko is a resident of Stamford, Connecticut, and the manager of Rubard, LLC, d/b/a CentMobile doing business in this juridical district. <u>Infra</u>, ¶27.

### Background Facts

9. Stanacard began as a project inaugurated in 2004 by Michael Choupak and Eduard Romanov who came up with a unique phone-calling methodology which assigns a "SmartDial" local phone number to a subscriber in the subscriber's area, connects such number – internally – to a specific international phone number identified by the subscriber, forwards the information to a third-party vendor to enable the vendor to complete the call, and thereby provides the subscriber with relatively cheap means of making international calls.

10. Choupak and Romanov patented their invention under U.S. Patent No. 7,346,156 duly issued by the U.S. PTO and entitled "Methods and Apparatuses for Placing a Phone Call" ("the '156 Patent"). A copy of the '156 Patent is attached hereto as Exhibit A.

11. Choupak and Romanov assigned all rights in the '156 Patent to Stanacard (the "Assignment"). A copy of the Assignment is attached hereto as Exhibit B.

12. In 2006 Romanov engaged Palatkevich – who used to work for Choupak at Intermedia.net, Inc., on another project –

to implement, at the instance and request of Stanacard, the '156 Patent. Palatkevich improved and further developed the unique and proprietary operating and anti-fraud computer systems for Stanacard (the "Systems"), and Stanacard put them to use. Infra.

13.  On July 2, 2012, Stanacard filed an application for the registration of the unique and proprietary computer software programs written for Stanacard by Palatkevich and others under the Copyright Act of 1976, 17 U.S.C. §§101 et seq. (the "Stanacard Copyrighted Works"). All rights in the Stanacard Copyrighted Works belong to Stanacard.

14.  Each of Palatkevich and BPVN had entered into a separate Non-Disclosure Agreement ("NDAs") with Stanacard. A copy of these NDAs is attached hereto as Exhibit C.

15.  Under the NDAs, all work performed by Palatkevich – first on Intermedia's behalf, and then on Stanacard's behalf – belong to Stanacard.

16.  The NDAs require Palatkevich to "execute and acknowledge all papers and to do any and all other things necessary for or incident to the applying for, obtaining, and maintaining letters patent, copyrights, trademarks or other intellectual property rights and to execute, on request, all papers necessary to assign and transfer such intellectual property rights to [Stanacard], its successors and assigns" to

4

enable Stanacard to register any relevant works under the Copyright Act of 1976, 17 U.S.C. §§101 *et seq.*

17. Once the Systems were up and running, Choupak formed Stanacard LLC in Delaware, took 80% of the membership interest in Stanacard, granted 10% membership interest therein to each of Palatkevich and Romanov, and moved both of them from Intermedia to Stanacard.

18. Romanov undertook marketing for Stanacard, while Palatkevich single-handedly developed, maintained and ran the Systems from his home until he resigned on July 6, 2009.

19. Palatkevich had complete and total access to the Systems at Stanacard. Upon information and belief, he also had complete copies of the Systems and of the Stanacard Copyrighted Works on his home computer and all necessary access codes.

20. In September 2007 Choupak hired Zaytsev – his former classmate at University of Minnesota, who had just been laid off by Deloitte & Touche – to separate, on a project basis, the finances of Stanacard from those of Intermedia.

21. By the end of December 2007 Stanacard had become a financially stand-alone entity, and Zaytsev continued to work for Stanacard and held himself out as Stanacard's CFO.

22. Zaytsev and anzFS, Inc. also entered into non-disclosure agreements ("NDAs") with Stanacard containing, *inter alia*, conflict of interest, non-compete, non-disparagement, non-

5

solicitation and confidentiality provisions identical to those set forth in the NDAs entered into by Palatkevich and BPVN. A copy of these NDAs is attached hereto as Exhibit D.

23. As Stanacard's CFO, Zaytsev had complete access to Stanacard's list of subscribers and all of their data, e.g., telephone numbers, credit card information, social security numbers, etc.

24. Since March 2008 Zaytsev demanded from Choupak a 10% membership interest in Stanacard. Choupak refused to oblige Zaytsev and ultimately fired Zaytsev in November 2009.

25. In the Summer of 2010 Zaytsev, and in the Spring of 2011, Palatkevich, sued Choupak and Stanacard in the Supreme Court, New York County, Index Nos. 651030/10 & 651358/11, respectively, seeking damages for (i) denying a 10% membership interest in Stanacard to Zaytsev, and (ii) repurchasing the 10% membership interest therein of Palatkevich, and related relief.

26. Defendants effectively concealed from Stanacard that CentMobile – a competitor of Stanacard since 2008 or 2009 – was and still is owned and operated by Palatkevich and Zaytsev.

27. CentMobile offers its subscribers non-local and international telephony services by practicing Stanacard's patented technology and methodology and thereby competes with Stanacard directly. CentMobile's subscribers place international calls by dialing an assigned local "CentMobile" telephone number

associated with a non-local or international number chosen by the subscriber. A copy of page(s) from Centmobile's website: http://www.centmobile.com/howtouse.aspx is attached hereto as Exhibit E. CentMobile offers its subscribers various incentives to build word-of-mouth business just as Stanacard does.

28. Until June 2012 one could not identify the owners of CentMobile because CentMobile has not been registered with the FCC, has not filed tax returns, etc.

29. In June 2012 CentMobile filed an application to register with the FCC. A copy of CentMobile's application is attached hereto as Exhibit F.

30. Choupak – who has since learned that Zaytsev, upon information and belief, (i) holds himself out as the CEO of CentMobile and (ii) works at what appears to be CentMobile's office at 345 Park Avenue, New York, New York, etc. – has promptly caused this complaint to be filed.

### FIRST CLAIM FOR INFRINGEMENT OF THE '156 PATENT
### (AGAINST ALL DEFENDANTS)

31. Stanacard repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1-30.

32. CentMobile has infringed and continues to infringe directly and indirectly one or more claims of the '156 Patent in the State of New York and elsewhere, incorporating, without permission, inventions protected by the '156 Patent into

its own telephone system, including the CentMobile Calling Card 2.0 promoted, offered, sold, used and operated from and through www.centmobile.com.

33. Palatkevich has infringed and continues to infringe directly and indirectly one or more claims of the '156 Patent.

34. Zaytsev has infringed and continues to infringe directly and indirectly one or more claims of the '156 Patent.

35. Dzerneyko has infringed and continues to infringe directly and indirectly one or more claims of the '156 Patent.

36. Defendants' infringement, supra, has caused, and will continue to cause, Stanacard to suffer monetary damages compensable under 25 U.S.C. §284 in an amount to be proven at trial, but in no event less than $10,000,000.

37. For the foregoing reasons, Stanacard respectfully requests this Court to award Stanacard appropriate monetary relief and to enjoin defendants permanently from infringing the '156 Patent.

### SECOND CLAIM FOR COPYRIGHT INFRINGEMENT
### (AGAINST ALL DEFENDANTS)

38. Stanacard repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1-30.

39. The Stanacard Copyrighted Works, i.e., computer software programs, supra, ¶12, were written by Palatkevich at

the instance and expense of Stanacard, constitute "work for hire" within the meaning of the Copyright Act of 1976, and belong to Stanacard.

40. Upon information and belief, defendant(s) have, without Stanacard's permission, reproduced, loaned or leased the Stanacard Copyrighted Works, in whole or in part, in violation of the Copyright Act of 1976, 17 U.S.C. §§101 et seq., thereby causing and continuing to cause damages to Stanacard.

41. Upon information and belief, defendant(s) have, without Stanacard's permission, prepared derivative works of the Stanacard Copyrighted Works in violation of the Copyright Act of 1976, 17 U.S.C. §§101 et seq., thereby causing and continuing to cause damages to Stanacard.

42. For the foregoing reasons, Stanacard requests the Court to award Stanacard damages in an amount to be proven at trial but in no event less than $10,000,000, and to enjoin defendants permanently from reproducing, loaning or leasing of the Stanacard Copyrighted Works or any derivatives thereof, and to require defendants to transfer the Stanacard Copyrighted Works and all derivatives thereof to Stanacard.

### THIRD CLAIM FOR UNFAIR COMPETITION AND MISAPPROPRIATION OF TRADE SECRETS (AGAINST ALL DEFENDANTS)

43. Stanacard repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1-30.

44. Since 2004 Stanacard had developed proprietary business processes, know-how, marketing techniques, computer software, subscriber lists related to, and used in, Stanacard's telephony services, representing a substantial investment in the value and goodwill of Stanacard's ongoing business and protected *inter alia* under the terms of the NDAs (the "Stanacard Trade Secrets").

45. Stanacard allowed access to the Stanacard Trade Secrets only to its key employees and only on a need-to-know basis, and otherwise took reasonable steps to protect the Stanacard Trade Secrets and to keep them confidential.

46. Defendants used Palatkevich's unfettered access to the Systems, the Stanacard Copyrighted Works and the Stanacard Trade Secrets during and, upon information and belief, following his departure from Stanacard to misappropriate the Stanacard Trade Secrets.

47. Defendants' use of thus misappropriated trade secrets to build their competing start-up company, CentMobile, was designed to cause and did cause damage to Stanacard, its business and its market place share and gave CentMobile an untoward business advantage to Stanacard's detriment by causing subscribers to abandon Stanacard in droves and switch to CentMobile.