UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                   :

STANACARD, LLC,

                                   :

                    Plaintiff,

                                   :    No. 12 Civ. 5176(CM)(MHD)   -

         -against-

                                   :

RUBARD, LLC, d/b/a CENTMOBILE,
ALEKSANDR PALATKEVICH, ARTUR        :
ZAYTSEV and ALEXANDER DZERNEYKO,

                                   :

                    Defendants.

                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## **RUBARD DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

Leonard Weintraub
Katherine B. Harrison
PADUANO & WEINTRAUB LLP
1251 Avenue of the Americas
Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (facsimile)
lweintraub@pwlawyers.com
kh@pwlawyers.com


Attorneys for Defendants Rubard, LLC
d/b/a Centmobile, Artur Zaytsev and
Alexander Dzerneyko

PRE-TRIAL JURY INSTRUCTIONS

## A.2. PRELIMINARY INSTRUCTIONS TO JURY[1]

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, Blackberry, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you

---

[1] Matthew Bender, Modern Federal Jury Instructions, Form 1-3 U.S. Circuit Court of Appeals, 5th Circuit)

leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence.

After the opening statements, the plaintiff will present its case through witness testimony and documentary or other evidence. Next, each defendant will have an opportunity to present his and its case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, the closing arguments, and my instructions.

It is now time for the opening statements.

<u>A.3. OUTLINE OF TRIAL</u>[2]

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

---

[2] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, A.5 Outline of Trial, at 8 (2014)

## A.4. CONDUCT OF COUNSEL[3]

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. Counsel also have the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All those questions of law must be decided by me, the court. You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the court for a ruling on the law.

As I already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

---

[3] Matthew Bender, Modern Federal Jury Instructions, Form 71-6

## A.5. RACE, RELIGION, NATIONAL ORIGIN, SEX, OR AGE[4]

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence.

It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender or age.

It would be equally improper for you to allow any feelings you might have about the nature of the claim against the defendant to influence you in any way.

The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

---

[4] Matthew Bender, Modern Federal Jury Instructions, Form 71-9 <u>Ham v. South Carolina</u>, 409 U.S. 524, 93 S. Ct. 848, 35 L. Ed. 2d 46 (1973); <u>In re Murchison</u>, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955)).

### A.6. CORPORATE PARTIES[5]

In this case, Plaintiff Stanacard and Defendant Rubard are corporations. The mere fact that one of the parties is a corporation does not mean it is entitled to any lesser consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

---

[5] Matthew Bender, Modern Federal Jury Instructions, Form 72-1 Fifth Circuit Civil Pattern Jury Instruction 2.13; Seventh Circuit Pattern Civil Jury Instruction 1.03; Ninth Circuit Model Civil Jury Instruction 4.1.; Eleventh Circuit Pattern Civil Jury Instructions, Basic Instruction 2.2)

## A.7. BURDEN OF PROOF – GENERAL INSTRUCTION[6]

This is a civil case and as such the Plaintiff has the burden of proving the material allegations of its complaint (*e.g.*, by a preponderance of the evidence).  Similarly, with respect to the counterclaims that have been made by the Rubard Defendants, the burden of proof is upon the Rubard Defendants to prove the material allegations of those counterclaims (*e.g.*, by a preponderance of the evidence).

If after considering all of the testimony you are satisfied that the Plaintiff has carried its burden on each essential point as to which it has the burden of proof, then you must find for the Plaintiff on its claims. If after such consideration you find the testimony of both parties to be in balance or equally probable, then the Plaintiff has failed to sustain his burden and you must find for the Defendants.  By the same token, if you find that the Defendants have carried their burden of proof with respect to each of the elements of their counterclaims, then you must find for the Defendants.

If upon a consideration of all the facts on the issue of you find that the Plaintiff has failed to sustain the burden cast upon it, then you should proceed no further and your verdict must be for the Defendants. If, however, you find that the Plaintiff has sustained the burden on this issue, then you should proceed to consider the issue of. In this regard, the burden is upon the Defendants to establish the affirmative defense.

If you determine that the Defendants have sustained their burden of establishing the affirmative defenses, then you should proceed no further and your verdict must be for the Defendants. If, however, you find that the Plaintiff has established the essential elements of its case and that the Defendants have not sustained their burden of the affirmative defense, then you should proceed to consider the issue of damages.

---

[6] Matthew Bender, Modern Federal Jury Instructions, Form 73-1

### A.8. PREPONDERANCE OF THE EVIDENCE[7]

Plaintiff has the burden of proof every disputed element of its claim to you by a preponderance of the evidence. If you conclude Plaintiff has failed to establish its claim by a preponderance of the evidence, you must decide against it on the issue you are considering.

What does a "preponderance of evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence—he must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of evidence.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this and you should put it out of your mind.

---

[7] Matthew Bender, Modern Federal Jury Instructions, Form 73-2 Fischl v. Armitage, 128 F.3d 50 (2d Cir. 1997) (quoting **Treatise**); Larson v. JoAnn Cab Corp., 209 F.2d 929 (2d Cir. 1954); Porter v. American Export Lines, Inc., 387 F.2d 409 (3d Cir. 1968); Virgin Islands Labor Union v. Caribe Construction Co., 343 F.2d 364 (3d Cir. 1965); Third Circuit Model Civil Jury Instruction 1.10; Bartley v. Euclid, Inc., 158 F.3d 261 (5th Cir. 1998); Gardner v. Wilkinson, 643 F.2d 1135 (5th Cir. 1981); Williams v. Eau Claire Public Schools, 397 F.3d 441 (6th Cir. 2005); Disner v. Westinghouse Electric Corp., 726 F.2d 1106 (6th Cir. 1984); Eighth Circuit Civil Jury Instruction 3.04; Nutraceutical Corp. v. Von Eschenbach, 459 F.3d 1033 (10th Cir. 2006), cert. denied, 550 U.S. 933 (2007); Black v. M & M Gear Co., 269 F.3d 1220 (10th Cir. 2001); Porter v. Natsios, 414 F.3d 13 (D.C. Cir. 2005); Jazz Photo Corp v. United States, 439 F.3d 1344 (Fed. Cir. 2006))

## A.9. CLEAR AND CONVINCING EVIDENCE

Plaintiff has the burden of proof on all of the elements of its claims by clear and convincing evidence. If you conclude that Plaintiff has failed to establish his claim by clear and convincing evidence, you must decide against it on the issue you are considering.

What does "clear and convincing evidence" mean? Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence, where you need believe only that a party's claim is more likely true than not true. On the other hand, "clear and convincing" proof is not as high a standard as the burden of proof applied in criminal cases, which is proof beyond a reasonable doubt.

Clear and convincing proof leaves no substantial doubt in your mind. It is proof that establishes in your mind, not only the proposition at issue is probable, but also that it is highly probable. It is enough if the party with the burden of proof establishes his claim beyond any "substantial doubt"; he does not have to dispel every "reasonable doubt."

(*If preponderance of evidence is not also charged, add*: It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by clear and convincing evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.)

## A.10. WHAT IS AND IS NOT EVIDENCE[8]

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the questions of the lawyers are not to be considered by you as evidence. It is the witnesses' answers that are evidence, not the questions. At times, a lawyer may have incorporated into a question a statement which assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

The famous example of this is the lawyer's question of a married witness: "When did you stop beating your wife?" You would not be permitted to consider as true the assumed fact that he ever beat his wife, unless the witness himself indicated he had, or unless there was some other evidence in the record that he had beaten his wife.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict. Also, if certain testimony was received for a limited purpose—such as for the purpose of assessing a witness's credibility—you must follow the limiting instructions I have given.

Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

To constitute evidence which may be considered by you, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

---

[8] Matthew Bender, Modern Federal Jury Instructions, Form 74-1 United States v. Aluminum Co. of America, 1 F.R.D. 62 (S.D.N.Y. 1939); Sims v. Greene, 161 F.2d 87 (3d Cir. 1947); Rodriguez v. Olin Corp., 780 F.2d 491, 496 (5th Cir. 1986); Seventh Circuit Pattern Civil Jury Instruction 1.06; Haines v. Powermatic Houdaille, Inc., 661 F.2d 94 (8th Cir. 1981); Eighth Circuit Civil Jury Instruction 1.02; Ninth Circuit Model Civil Jury Instructions 1.6 and 1.7; Rasmussen Drilling, Inc., v. Kerr-McGee Nuclear Corporation, 571 F.2d 1144 (10th Cir. 1978).

<u>A.11. DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>[9]

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence. Direct evidence is when a witness testifies about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom blinds were drawn and you could not look outside. As you were sitting here, someone walked in with an umbrella which was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on (*e.g.*, a preponderance of) all the evidence presented.

---

[9] Matthew Bender, Modern Federal Jury Instructions, Form 74-2 <u>Michalic v. Cleveland Tankers, Inc.</u>, 364 U.S. 325, 330, 81 S. Ct. 6, 5 L. Ed. 2d 20 (1960); <u>United Textile Workers of America, AFL-CIO, Local Union No. 120 v. Newberry Mills, Inc.</u>, 238 F. Supp 366 (W.D.S.C. 1965); Fifth Circuit Pattern Civil Jury Instruction 2.18; Seventh Circuit Pattern Civil Jury Instruction 1.12; <u>Ellis Fischel State Cancer Hosp. v. Marshall</u>, 629 F.2d 563 (8th Cir. 1980); Ninth Circuit Model Civil Jury Instruction 1.9; <u>Daniels v. Twin Oaks Nursing Home</u>, 692 F.2d 1321 (11th Cir. 1982); Eleventh Circuit Pattern Civil Jury Instructions, Preliminary Instruction 1.1)

## A.12. STIPULATION OF TESTIMONY[10]

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect, if any, to be given that testimony.

---

[10] Matthew Bender, Modern Federal Jury Instructions, Form 74-5 Third Circuit Model Civil Jury Instruction 2.3; Fifth Circuit Pattern Civil Jury Instruction 2.2; Koenig v. Frank's Plastering Co., 227 F. Supp. 849 (D. Neb. 1964), aff'd, 341 F.2d 257 (8th Cir. 1965); Tucker v. Brady, 305 F.2d 550, 552 (9th Cir. 1962))

<u>A.13. DEPOSITIONS</u>[11]

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where prior to trial the attorneys for one side may question a witness or an adversary party under oath before a court stenographer. This is part of the pretrial discovery, and each side is entitled to take depositions. You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.

---

[11] Matthew Bender, Modern Federal Jury Instructions, Form 74-14

<u>A.14. EFFECT OF INFERENCE ON BURDEN OF PROOF</u>[12]

The mere existence of an inference against any Defendant does not relieve Plaintiff of the burden of establishing its case by a preponderance of the evidence (*or* by clear and convincing evidence). If Plaintiff is to obtain a verdict, you must still believe from the credible evidence that it has sustained the burden cast upon it. If it has failed, then your verdict must be for the Defendants. If you should find that all of the evidence is evenly balanced, then Plaintiff has failed to sustain the burden of proof and your verdict should be for Defendants.

If and only if you determine, after carefully weighing all the evidence, that the facts favor the Plaintiff by the standard I have articulated, then it has met the burden of proof.

---

[12] Matthew Bender, Modern Federal Jury Instructions, Form 75-2

<u>A.15. INTEREST IN OUTCOME</u>[13]

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his testimony.

---

[13] Matthew Bender, Modern Federal Jury Instructions, Form 76-3

## A.16. EXPERT WITNESSES - GENERALLY[14]

In this case, I may permit certain witnesses to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the witness to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

---

[14] Matthew Bender, Modern Federal Jury Instructions, Form 76-9

## A.17. MULTIPLE CLAIMS – MULTIPLE DEFENDANTS[15]

I have two more cautionary instructions before I define the types of damages you may award, if you find that the plaintiff has proved liability according to the standards I have enumerated.

First, you should not award compensatory damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish a one dollar injury, you could not award him one dollar compensatory damages on each claim—he is only entitled to be made whole again, not to recover more than he lost. Of course, if different injuries are attributed to the separate claims, then you must compensate him fully for all of the injuries.

With respect to punitive damages, you may make separate awards on each claim that is established.

Second, you must be careful to impose any damages that you may award on a claim solely upon the defendant or defendants who you find to be liable on that claim. Although there are (*e.g.,* four) defendants in this case, it does not follow that if one is liable, all or any one of the others are liable as well. Each defendant is entitled to fair, separate and individual consideration of the case without regard to your decision as to the other defendants. If you find that only one defendant is responsible for a particular injury, then you must impose damages for that injury only upon that defendant.

Nevertheless, you might find that more than one defendant is liable for a particular injury. If two or more persons unite in an intentional act that violates another person's right, then all of those persons are jointly liable for the acts of each of them; the law does not require the injured party to establish how much of the injury was done by each particular defendant that you find liable. Thus, if you find that the defendants who you find to be liable acted jointly, then you may treat them jointly for purposes of deciding damages. If you decide that two or more (both) of the defendants are jointly liable on a particular claim, then you may simply determine the overall amount of damages for which they are liable, without breaking that figure down into individual percentages.

---

[15] Matthew Bender, Modern Federal Jury Instructions, Form 77-2

## A.18. SELECTION OF FOREPERSON[16]

When you retire, you should elect one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

---

[16] Matthew Bender, Modern Federal Jury Instructions, Form 78-5

<u>B. PATENT INFRINGEMENT CLAIM JURY INSTRUCTIONS</u>
(FEDERAL CLAIM)

## B.1. PRELIMINARY INSTRUCTIONS

### B.1.a. WHAT A PATENT IS AND HOW ONE IS OBTAINED[17]

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for 17 years from the date the patent issued to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that

---

[17] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, A.1 Preliminary Instructions – What a Patent is and How One is Obtained, at 2 (2013)

the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not the alleged infringer has proven that the patent is invalid.

## B.1.b. THE STATUTE[18]

The plaintiff has brought a claim that the defendants Rubard, Zaytsev, Dzerneyko have infringed its patent. The rights of a patent holder are protected by Section 271(a) of Title 35 of the United States Code, which provides that "whoever without authority makes, uses, offers to sell or sells any patented invention during the term of the patent therefor, infringes the patent."

In defense, the defendant claims first that the defendant did not infringe the patent, and second, that the plaintiff does not hold a valid patent. The defendant also asserts that the patent is unenforceable due to, e.g., inequitable conduct.

Title 35 of the United States Code sets forth the conditions for patentability. Section 101 of Title 35, which governs whether a claimed invention contains patentable subject matter, provides:

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

I will explain to you later the conditions for a patent to be valid under the United States Code.[19]

---

[18] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-1 Seventh Circuit Pattern Civil Jury Instruction 11.1.1).

[19] Authority: Seventh Circuit Pattern Civil Jury Instruction 11.1.1

<u>B.1.d. PATENT AT ISSUE</u>[20]

[The Court should show the jury the patent at issue and point out the parts, which include the specification, drawings, and claims, including the claims at issue. The Court may wish to include a joint, nonargumentative statement of the patented subject matter at this point in the instructions.

The Court may wish to hand out its claim constructions (if the claims have been construed at this point) and the glossary at this time. If the claim constructions are handed out, the following instruction should be read:]

I have already determined the meaning of the claims of the '156 patent. You have been given a document reflecting those meanings. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning. You are to apply my definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

---

[20] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, A.3 Preliminary Instructions – Patent at Issue, at 5 (2013)

<u>B.1.e. OVERVIEW OF APPLICABLE LAW</u>[21]

[The Court may wish to give preliminary instructions that are applicable to the specific issues in the case. This may help focus the jury on the facts that are relevant to the issues it will have to decide. Even if preliminary instructions are given, the Court would, nonetheless, give complete instructions at the close of evidence.]

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether [alleged infringer] have infringed the claims of the '156 patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however, [alleged infringer] may infringe the '156 patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a method meeting all the requirements of a claim of the '156 patent. [alleged infringer] may also indirectly infringe the '156 patent by contributing to infringement by another entity, or by inducing another person or entity to infringe. I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the '156 patent is invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. For a claim to be invalid because it is not new, [alleged infringer] must show, by clear and convincing evidence, that all of the elements of a claim are present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. We call these "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention(s) claimed in the '156 patent are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

A patent may also be invalid if its description in the specification does not meet certain requirements. To be valid, a patent must meet the "written description" requirement. In order to meet this written description requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent. The disclosure of a patent must also meet the "enablement" requirement. To meet this requirement, the description in the patent has to be sufficiently full and clear to have allowed persons of ordinary skill in the field of

---

[21] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, A.4 Preliminary Instructions – Overview of Applicable Law, at 6 (2013)

technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.

If you decide that any claim of the '156 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Stanacard to compensate it for the infringement. A damages award should put Stanacard in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Stanacard would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate Stanacard and not to punish [alleged infringer]. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Stanacard for the infringement, in order to punish [alleged infringer]. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

### B.1.f. BURDEN OF PROOF[22]

There will be two burden of proof standards by which you must weigh the evidence in this case: preponderance of the evidence and clear and convincing evidence.

The plaintiff is charging the defendant with patent infringement. Plaintiff has the burden of proving infringement of the claims of the patent by a preponderance of the evidence.

What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof. That is because the party bearing this burden must prove more than simple equality of evidence—he or she must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of the evidence.

The defendant claims that the plaintiff's patent is invalid. Defendant has the burden of establishing that the patent was invalid by clear and convincing evidence. Plaintiff also claims that defendant's infringement of its patent has been and is willful. Plaintiff must prove its claim of willful infringement by clear and convincing evidence.

What does "clear and convincing evidence" mean? Clear and convincing proof leaves no substantial doubt in your mind. It is proof that establishes in your mind, not only that the proposition at issue is probable, but also that it is highly probable. It is enough if the party with the burden of proof establishes its claim beyond any "substantial doubt"; the party does not have to dispel every "reasonable doubt."

Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence, where you need believe only that the party's claim is more likely true than not true. On the other hand, clear and convincing proof is not as high a standard as the burden of proof applied in criminal cases, which is proof beyond a reasonable doubt.

---

[22] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-4

<u>B.2. SUMMARY OF CONTENTIONS</u>[23]

       As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

       As I previously told you, Stanacard seeks money damages from [alleged infringer] for allegedly infringing the '156 patent by [making], [importing], [using], [selling], and [offering for sale] [products] [methods] that Stanacard argues are covered by claims [ ] of the '156 patent. These are the asserted claims of the '156 patent. Stanacard also argues that [alleged infringer] has [actively induced infringement of these claims of the '156 patent by others] [contributed to the infringement of these claims of the '156 patent by others]. The [products] [methods] that are alleged to infringe are [list of accused products or methods].

       Defendants [alleged infringer] deny that they have infringed the asserted claims of the '156 patent [and argues that, in addition, claims [ ] are invalid.] [Add other defenses if applicable.]

       Your job is to decide whether [alleged infringer] has infringed the asserted claims of the '156 patent and whether any of the asserted claims of the '156 patent are invalid. If you decide that any claim of the '156 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Stanacard to compensate it for the infringement. [You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.]

---

[23] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, B.1 Summary of Contentions, at 11 (2013)

## B.3. CLAIM CONSTRUCTION

## B.3.a. THE ROLE OF THE CLAIMS OFA PATENT[24]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

---

[24] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 2.1 The Role of the Claims of a Patent, at 12 (2013)

<u>B.3.b. HOW A CLAIM DEFINES WHAT IT COVERS</u>[25]

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.[26]

---

[25] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 2.2 How a Claim Defines What it Covers, at 13 (2013)

[26] Authorities: For "comprising," *see, e.g.*, *Cook Biotech Inc. v. ACell, Inc*., 460 F.3d 1365, 1373-78 (Fed. Cir. 2006); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim . . . is open-ended and allows for additional steps."); for "consisting of," *see, e.g.*, *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1358-61 (Fed. Cir. 2006); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383 (Fed. Cir. 2000) ("In simple terms, a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'"); for "consisting essentially of," *see, e.g.*, *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1361 (Fed. Cir. 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1239 (Fed. Cir. 2003) ("consisting essentially of" is a middle ground between open-ended term "comprising" and closed-ended phrase "consisting of").

## B.3.c. SCOPE OF THE CLAIM—CLAIM INTERPRETATION[27]

To decide the questions of infringement and validity, you must first understand what the claims of the patent mean. This is called "claim interpretation."

It is my duty under the law to interpret what the patent claims mean. I have made my determination and I will instruct you accordingly. You must apply the meaning I give the patent claims for both your decision on infringement and your decision on validity.

The meaning of many of the words and phrases in the claims at issue are not disputed. You should give those words and phrases their ordinary English language meaning, consistent with the teachings of the patent specifications. Other words and phrases, however, need to be defined. And I will now instruct you how those words are to be understood when deciding the issues of infringement and validity in this case.[28]

---

[27] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-6 United States Supreme Court: Markman v. Westview Instruments, Inc., 517 U.S. 370, 372, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996); Seventh Circuit Pattern Civil Jury Instruction 11.2.5; and Northern District of California Model Patent Jury Instruction 2.1).

[28] Authorities: United States Supreme Court: Markman v. Westview Instruments, Inc., 517 U.S. 370, 372, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996); Seventh Circuit Pattern Civil Jury Instruction 11.2.5; and Northern District of California Model Patent Jury Instruction 2.1

<u>B.3.d. INDEPENDENT AND DEPENDENT CLAIMS</u>[29]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim(s) [ ] of the '156 patent are each independent claims.

The remainder of the claims in the '156 patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A process that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

---

[29] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 2.2a Independent and Dependent Claims, at 14 (2013)

## B.4. INFRINGEMENT

## B.4.a. INFRINGEMENT GENERALLY[30]

I will now instruct you how to decide whether or not [alleged infringer] has infringed the '156 patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, Stanacard must also prove that [alleged infringer]'s indirect infringement caused direct infringement.

In this case, Stanacard has alleged that [alleged infringer] directly infringes the '156 patent. [[In addition,] Stanacard has alleged that [alleged direct infringer] directly infringes the '156 patent, and [alleged infringer] is liable for [actively inducing or contributing to] that direct infringement by [alleged direct infringer].

In order to prove infringement, Stanacard must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.[31]

---

[30] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 3.1 Infringement Generally, at 18 (2013)

[31] Authorities

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1341 n.15 (Fed. Cir. 2005) (infringement must be proven by a preponderance of the evidence); *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (a patentee must "prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim"); *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1468-69 (Fed. Cir. 1993) (upholding lower court's finding of noninfringement based on plaintiff's failure to prove that the accused product met all of the claimed requirements).

B.4.b. DIRECT INFRINGEMENT[32]

     In order to establish that the defendant is liable for direct infringement, the plaintiff must prove by a preponderance of the evidence that every requirement in the asserted claim is included in defendant's product (or method or system).

     To determine whether there is an infringement, you must compare the allegedly infringing product with the scope of the patent claims.

     The scope of the patent claims is a question of law for the court. Plaintiff alleges that the defendant has infringed claims _____ and _____ of the patent. I instruct you that the patent claims alleged to have been infringed in this case are [set forth scope of the allegedly infringed claims.]

     Your task is to determine, as a question of fact, whether the allegedly infringing product infringes the patent claims as I have defined their scope.

     In this case, plaintiff contends that the patented claim was directly infringed. A patent is directly infringed if the allegedly infringing product literally infringes one of the patent claims. There are two ways in which a patent can be directly infringed. First, a patent claim may be literally infringed. Second, a patent claim may be infringed under what is called the "doctrine of equivalents."

     In order for you to find that defendant's product literally infringed one of plaintiff's patent claims, you must find that each requirement of the patent claim is found in defendant's product. In other words, a patent claim of the plaintiff is literally infringed if defendant's product includes each and every element, limitation and feature of the patent claim. If defendant's product does not have any single element, limitation or feature recited in plaintiff's patent claim, defendant does not literally infringe that claim. Thus, if there are differences between an element of an asserted claim and the allegedly infringing product, there can be no literal infringement of that claim.

     You must determine literal infringement with respect to each asserted patent claim individually.

     Not all the claims of a patent have to be infringed before a patent is infringed. In order to prove patent infringement, the plaintiff need only establish by a preponderance of the evidence that one claim is infringed.

     To prove that an independent claim is literally infringed, the plaintiff must prove by a preponderance of the evidence that defendant's product includes each element, limitation or feature of the independent claim. To prove infringement of a dependent claim, that is, a claim whose scope depends on one or more additional claims, the plaintiff must prove by a preponderance of the evidence that defendant's product includes each element, limitation or

---

[32] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-9 Read Corp. v. Portec, Inc., 970 F.2d 816, 822 n.2 (Fed. Cir. 1992); Nestier Corp. v. Menasha Corporation-Lewisystems Div., 739 F.2d 1576, 1579 (Fed. Cir. 1984); W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1559 (Fed. Cir. 1983).

feature of the dependent claim and all of the claims on which it depends.

You should not compare defendant's allegedly infringing product with plaintiff's commercial products. Instead, you should compare the defendant's product only with the claim(s) in the patent.

If you find that defendant's product does not literally infringe, you must then determine whether it infringes under the doctrine of equivalents.[33]

---

[33] Authority: Read Corp. v. Portec, Inc., 970 F.2d 816, 822 n.2 (Fed. Cir. 1992); Nestier Corp. v. Menasha Corporation-Lewisystems Div., 739 F.2d 1576, 1579 (Fed. Cir. 1984); W.L. Gore & Assocs., Inc. v. Garlock, Inc., 721 F.2d 1540, 1559 (Fed. Cir. 1983).

<u>B.4.c. DOCTRINE OF EQUIVALENTS</u>[34]

Even if the patented claim was not literally infringed, the plaintiff may prove direct infringement under the theory called the "doctrine of equivalents."

Under the doctrine of equivalents, you may find that defendant's product ( or method or system) infringes a plaintiff's patented claim if the plaintiff establishes by a preponderance of the evidence that defendant's product contains elements identical or substantially equivalent to each element, limitation, or feature of that claim. If the defendant's product is missing even one element, limitation, or feature, and does not contain an equivalent of the missing element, limitation, or feature, it cannot infringe under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element, limitation, or feature of the asserted patent claim and decide whether the defendant's product has an identical or equivalent element.

An element of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the element of the product and the claim's requirement were not substantial as of the time of the alleged infringement. One way to decide whether any difference between a requirement and the product is not substantial is to consider whether, as of the time of the alleged infringement, the element of the product performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

An accused product does not infringe under the doctrine of equivalents if it performs the function and achieves the result in a substantially different way than the claimed invention.

The doctrine of equivalents does not involve the application of a formula and is not an absolute to be considered in a vacuum. Rather, the question of whether one component of the allegedly infringing device is equivalent to an element in the patented claim is a factual matter. It requires you to consider the context of the entire claim. Your answer will depend upon the drawings and written description, the patent application history, the prior art and all the circumstances of this case.

---

[34] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-10 : United States Supreme Court: Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 122 S. Ct. 1831, 152 L. Ed. 2d 944 (2002); Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997); Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 70 S. Ct. 854, 94 L. Ed. 1097 (1950); Seventh Circuit Pattern Civil Jury Instruction 11.2.11.2; Northern District of California Model Patent Jury Instruction 3.4; Eleventh Circuit Pattern Civil Jury Instructions, Claim Instruction 8.1).

<u>B.4.d. LIMITATIONS ON DIRECT INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS"</u>[35]

[Although the applicability of these limitations is ultimately decided by the Court, this instruction is provided for the case in which the Court decides to submit these issues to the jury for advisory findings.]

[If there is a question as to whether the prior art limits the doctrine of equivalents:

The prior art may preclude a finding of infringement under the doctrine of equivalents. I will explain what "prior art" is, but, generally speaking, "prior art" is things that were already known or done before the invention. In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.]

[Statement of the law not using "hypothetical claim":

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular [product or process] that is accused of infringing a particular claim, you must determine what [products or processes] are in the "prior art" as well as what [products or processes] would have been obvious from the "prior art" to a person having an ordinary level of skill in the field of technology of the patent at the time of the invention.

If [alleged infringer] establishes that a [product or process] that (1) meets the same claim requirements as the [product or process] that is accused of infringing and (2) has the same allegedly "equivalent" alternative feature(s) as the [product or process] that is accused of infringing is in the prior art or would have been obvious from the prior art to a person having ordinary skill in the field of technology of the invention at the time of the invention, you must find that the claim has not been infringed.

[alleged infringer] has the burden of proving that this hypothetical, equivalent claim was within the prior art at the time of the alleged infringement, by a preponderance of the evidence.]

[Alternative statement of the law using "hypothetical claim":

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents, you must first have in mind a "hypothetical claim" that would cover the accused, allegedly equivalent [product or process] literally. The hypothetical claim is exactly the same as the claim at issue, except that the unmet claim requirements are broadened so that they would be met by the allegedly "equivalent" hypothetical claim.

Once you have this equivalent "hypothetical claim" in mind, you must decide whether this hypothetical claim would have been invalid for either anticipation or obviousness. I will instruct you later on how to determine if a claim is invalid for anticipation or obviousness. You should use these same rules to determine whether or not the "hypothetical claim" would be invalid for

---

[35] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 3.1d Limitations on Direct Infringement "Under the Doctrine of Equivalents", at 24 (2012)

anticipation or obviousness. If you determine that the "hypothetical claim" would have been invalid for anticipation or obviousness, then you must find that there is no infringement of this particular claim under the doctrine of equivalents.]

[If there is a question as to whether a disclosure in the patent precludes equivalence:
You may not find that a [product or process] infringes a claim under the doctrine of equivalents if you find that: (1) the allegedly "equivalent" alternative feature(s) of that [product or process] was/were described somewhere in the patent and (2) that [product or process] is not covered literally by any of the claims of the patent.]

[If there is a question as to argument-based prosecution history estoppel:

You may not find that a [product or process] infringes a claim under the doctrine of equivalents if you find that, during the patent application process, the applicant for the patent distinguished an unmet requirement from the allegedly "equivalent" alternative aspect of that [product or process].]

[If there is a question as to amendment-based prosecution history estoppel:

[alleged infringer] has argued that Stanacard cannot assert infringement under the doctrine of equivalents due to statements Stanacard made to the PTO in order to get the claim allowed in the first place. In order to find [accused product] to be equivalent, you must also make certain findings regarding the statements Stanacard made to the PTO in order to get the '156 patent. Specifically, in order to find equivalents, you must first also find one or more of the following: (1) the amendment that is asserted by [alleged infringer] to limit the scope of equivalents substituted a broader requirement for a narrower requirement or replaced a requirement of equal scope; (2) the reason for making this amendment was not related to patentability; (3) a person having ordinary skill in the field of technology of the patent at the time of the amendment would not have foreseen the potential substitution of the allegedly "equivalent" alternative for the unmet claim requirement; (4) the reason for the amendment is tangential or relates to some issue other than the assertion of equivalence at issue; or (5) some other reason, such as the shortcomings of language, prevented the applicant from using claim language that included the allegedly "equivalent" alternative. You may not find that the alternative feature of the [accused product or process] is an equivalent to an unmet requirement of a claim if that requirement was added to the claim (or to any claim of the '156 patent) by amendment during the prosecution of the applications that led to issuance of the '156 patent, unless you also find that at least one of these factors that I have identified to you.]

[If there is a question as to vitiation:

You may not determine that an alternative aspect of a [product or process] is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement. Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.][36]

---

[36] Authorities
*Honeywell Int'l v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (en banc); *Interactive Pictures Corp. v. Infinite Pictures,*

## B.5 INDIRECT INFRINGEMENT

## B.5.a. ACTIVE INDUCEMENT[37]

Stanacard alleges that [alleged infringer] is liable for infringement by actively inducing [someone else] [some other company] to directly infringe the '156 patent literally or under the doctrine of equivalents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

[alleged infringer] is liable for active inducement of a claim only if Stanacard proves by a preponderance of the evidence:

(1) that the acts are actually carried out by [insert name or other description of alleged direct infringer] and directly infringe that claim;
(2) that [alleged infringer] took action during the time the '156 patent was in force intending to cause the infringing acts by [insert name or other description of alleged direct infringer]; and
(3) that [alleged infringer] was aware of the '156 patent and knew that the acts, if taken, would constitute infringement of that patent.

[addition to the end of (3) above when willful blindness concerning the '156 patent's existence is at issue:]

or that [alleged infringer] believed there was a high probability that the acts by [insert name or other description of alleged direct infringer] would infringe a patent [by patent holder] and [alleged infringer] took deliberate steps to avoid learning of that infringement.

If you find that [alleged infringer] was aware of the patent, but believed that the acts it encouraged did not infringe that patent, or that the patent was invalid, [alleged infringer] cannot be liable for inducement.

In order to establish active inducement of infringement against one defendant, it is not sufficient that another defendant directly infringes the claim.  Nor is it sufficient that [alleged infringer] was aware of the act(s) by another defendant that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that [alleged infringer] specifically intended the direct infringer to infringe the '156 patent or that [alleged infringer] believed there was a high probability that the alleged direct infringer would infringe the '156 patent, but deliberately avoided learning the infringing nature of the alleged direct infringer's acts. The mere fact, if true, that [alleged infringer] knew or should have known that there was a substantial risk that the alleged direct infringer's acts would infringe the 'patent would not be sufficient for active inducement of infringement.

---

*Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1320 (Fed. Cir. 1999); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 676, 684 (Fed. Cir. 1990).
[37] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 3.2 Indirect Infringement – Active Inducement, at 27 (2013)

## B.5.b. CONTRIBUTORY INFRINGEMENT [38]

Plaintiff claims that the defendant [name] contributory infringed on plaintiff's patent.

In order to find the defendant liable for contributory infringement, you must find that the plaintiff has proved by a preponderance of the evidence each of the following elements:

First, that some person directly infringed the patent;

Second, that the defendant offered to sell, sold or supplied in (or imported into) the United States a material component of the patented product (or method or system) with knowledge that the component was specially made or especially adapted for use in the patented product;

Third, that the component in question is not a staple article of commerce suitable for a substantial non-infringing use; and

Fourth, that the defendant sold or supplied the component knowing of the plaintiff's patent and knowing that the component was especially made (or especially adapted) for a use which would infringe the plaintiff's patent.

If you find that plaintiff has proved each of the elements listed above by a preponderance of the evidence, your verdict should be for the plaintiff on its claim of contributory infringement against the defendant. On the other hand, if any of these things has not been proved, your verdict should be for the defendant on the contributory infringement claim.

---

[38] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-12 United States Supreme Court: Aro Mfg. Co. v. Convertible Top Replacement Co. (Aro II), 377 U.S. 476, 84 S. Ct. 1526, 12 L. Ed. 2d 457 (1964); Aro Mfg. Co. v. Convertible Top Replacement Co. (Aro I), 365 U.S. 336, 81 S. Ct. 599, 5 L. Ed. 2d 592 (1961); Arris Group, Inc. v. British Telecomms. PLC, 639 F.3d 1368 (Fed. Cir. 2011); Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321 (Fed. Cir. 2010); Seventh Circuit Pattern Civil Jury Instruction 11.2.13; Northern District of California Model Patent Jury Instruction 3.9.)

<u>B.6. WILLFUL INFRINGEMENT</u>[39]

[This instruction should be given only if willfulness is in issue.]

In this case, Stanacard argues both that [alleged infringer] infringed and, further, that [alleged infringer] infringed willfully. If you have decided that [alleged infringer] has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine by clear and convincing evidence that [alleged infringer] acted recklessly.

To prove that [alleged infringer] acted recklessly, Stanacard must prove two things by clear and convincing evidence:

The first part of the test is objective: the patent holder must persuade you that [alleged infringer] acted despite a high likelihood that [alleged infringer]'s actions infringed a valid and enforceable patent. In making this determination, you may not consider [alleged infringer]'s state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness.[40]

Only if you conclude that the [alleged infringer]'s conduct was reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of the [alleged infringer]. The patent holder must persuade you that [alleged infringer] actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether [alleged infringer] had this state of mind, consider all facts which may include, but are not limited, to:

(1) Whether or not [alleged infringer] acted in accordance with the standards of commerce for its industry;
(2) Whether or not [alleged infringer] intentionally copied a product of Stanacard that is covered by the '156 patent;
(3) Whether or not there is a reasonable basis to believe that [alleged infringer] did not infringe or had a reasonable defense to infringement;
(4) Whether or not [alleged infringer] made a good-faith effort to avoid infringing the '156 patent, for example, whether [alleged infringer] attempted to design around the '156 patent; [and]
(5) Whether or not [alleged infringer] tried to cover up its infringement[./; and]
(6) [Give this instruction only if [alleged infringer] relies upon an opinion of counsel as a defense to an allegation of willful infringement:

---

[39] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 3.3 Indirect Infringement – Contributory Infringement, at 29 (2013)

[40] In determining whether to present this instruction to the jury, the parties and the Court should recognize that "the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to de novo review." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012). *See also id.* ("When the objective prong turns on fact questions, as related, for example, to anticipation, or on legal questions dependent on the underlying facts, as related, for example, to questions of obviousness, the judge remains the final arbiter of whether the defense was reasonable, even when the underlying fact question is sent to a jury.").

[alleged infringer] argues it did not act recklessly because it relied on a legal opinion that advised [alleged infringer] either (1) that the [product] [method] did not infringe the '156 patent or (2) that the '156 patent was invalid [or unenforceable]. You must evaluate whether the opinion was of a quality that reliance on its conclusions was reasonable.]

<u>B.4 VALIDITY</u>[41]

<u>4.1 PATENT VALIDITY – INTRODUCTION</u> [42]

The defendant claims that the patent is invalid. As I previously instructed you, the patent is presumed to be valid. It is the defendant's burden to establish invalidity of the patent by clear and convincing evidence.

The defendant claims that the patent is invalid because it fails to satisfy the following conditions for patentability [select appropriate conditions]:
(1)  novelty;
(2)  utility;
(3)  non-obviousness.
(4)  adequate written description;
(5)  enablement;
(6)  definiteness; and
(7)  for patent actions commenced prior to September 16, 2011: disclosure of the best mode.

To prove invalidity, the defendant must show by clear and convincing evidence that one of these requirements (if applicable: or any other basis for invalidity) is not satisfied.

If you find by clear and convincing evidence that the patent lacks novelty or utility or non-obviousness or any other requirement for validity, then you should find the patent invalid and render a verdict for the defendant.

---

[41] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 4.1 Invalidity – Burden of Proof, at 41 (2013)

[42] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-15 : Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. —, 131 S. Ct. 2238, 180 L. Ed. 2d 131 (2011); Graham v. John Deere Co., 383 U.S. 1, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966); Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364 (Fed. Cir. 2011); August Tech. Corp. v. Camtek, Ltd., 655 F.3d 1278 (Fed. Cir. 2011); Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336 (Fed. Cir. 2011); Seventh Circuit Pattern Civil Jury Instructions 11.1.12, 11.3.1.; Eleventh Circuit Pattern Civil Jury Instructions, Claim Instruction 8.1).

<u>B.7.b. PRIOR ARTS DEFINED –</u>
<u>PATENTS FILED PRIOR TO MARCH 16, 2013</u>[43]

For patents filed prior to March 16, 2013: Prior art includes any of the following items that was received into evidence during the trial:

1. Patents that issued anywhere in the world more than one year before the patent application was filed, or before the date of the invention;

2. Printed publications from anywhere in the world having a date more than one year before the patent application was filed or before the date of the invention;

3. United States patents, or published United States patent applications, filed before the date of the invention;

4. Anything in the public use or on sale in the United States more than one year before the patent application was filed;

5. Anything that was publicly known or used by others in the United States before the date of the invention; and

6. Anything that was made in the United States by another person before the date of the invention, where the thing made was not abandoned, suppressed, or concealed.

---

[43] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-17 : Seventh Circuit Pattern Civil Jury Instruction 11.3.3).

<u>B.7.c. THE CLAIMS</u>[44]

For anticipation:

For the claim to be invalid because it is not new, [alleged infringer] must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous device or method that was known of, used, or described in a single previous printed publication or patent. We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either stated expressly or implied to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.]

[If invention date is disputed: In this case, you must determine the date of invention [or conception] [and/or] [reduction to practice] for the [claimed invention or alleged prior art].

The date of invention is either when the invention was reduced to practice or when conceived, provided the inventor(s) were diligent in reducing the invention to practice. Diligence means working continuously, though not necessarily every day.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice, even if the inventor did not know at the time that the invention would work. Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that, if the idea were communicated to a person having ordinary skill in the field of the technology, he or she would be able to reduce the invention to practice without undue research or experimentation. This requirement does not mean that the inventor has to have a prototype built, or actually explained her or his invention to another person. But, there must be some evidence beyond the inventor's own testimony that confirms the date on which the inventor had the complete idea. Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

A claimed invention is "reduced to practice" when it has been constructed/used/tested sufficiently to show that it will work for its intended purpose or when the inventor files a patent application. An invention may also be reduced to practice even if the inventor has not made or tested a prototype of the invention if it has been fully described in a filed patent application.]

---

[44] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 4.3a Prior Art, at 47 (2013)

### B.7.d. PRIOR PUBLIC USE[45]

The defendant contends that there was a prior public use of the claimed invention.

Public use is any use of the invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor. An invention is publicly used when it is available to a member of the public, even a single person, regardless of whether the public could reasonably learn the invention by analyzing or inspecting the thing used. A single public use is sufficient to render a patent invalid.

However, not every use is a public use within the meaning of the statute. A good faith use for experimental purposes is not a public use. Certain activities qualify for this "experimental use" exception if they are a good faith effort to perfect the invention or to determine if the invention will work for its intended purpose.

Specifically, this exception applies only to experimentation by or under the control of the inventor of the patent (or his assignee). The experimentation must be directed to the claimed elements of the invention, and it must be for the purpose of technological improvement. If any commercial exploitation results from the experimentation, it must be merely incidental to the primary purpose of experimentation.

In determining whether a prior use was experimental, you may consider all of the circumstances surrounding the prior use, including the length of the alleged test period, whether payment was made for the product, whether there was a secrecy agreement, whether progress reports or other test results were kept, whether someone other than the inventor conducted the experiments, and the overall number of tests performed. An invention cannot remain in this experimental status at the same time that it is being offered for sale to customers. A sale or offer to sell the product terminates its experimental status.

Secret use by a third party is also not an invalidating public use. Thus, if the particular product is used by a third party under circumstances of secrecy, that does not invalidate the patent.

---

[45] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-18 Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364 (Fed. Cir. 2011); Clock Spring, L.P. v. Wrapmaster, Inc., 560 F.3d 1317 (Fed. Cir. 2009); American Seating Co. v. USSC Grp., Inc., 514 F.3d 1262 (Fed. Cir. 2008)).

<u>B.7.e. VALIDITY – THE CLAIMS</u>[46]

<u>4.3b-1 ANTICIPATION</u>
(For Patents Having an Effective Filing Date Before March 16, 2013)

In order for someone to be entitled to a patent, the invention must actually be "new" and the inventor must not have lost her or his rights by delaying the filing of an application claiming the invention. In general, inventions are new when the identical [product or process] has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis.

[alleged infringer] contends that claim(s) [ ] of the '156 patent is/are invalid because the claimed invention(s) is/are anticipated or because Stanacard lost the right to obtain a patent. [alleged infringer] must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid.

Here is a list of ways that [alleged infringer] can show that a patent claim was not new or that the patentee lost the right to patent the claim(s) [choose those that apply based on alleged infringer's contentions]:

1. An invention is not new if it was known to or used by others in the United States before the [insert date of invention]. An invention is known when the information about it was reasonably accessible to the public on that date.
2. An invention is not new if it was already patented or described in a printed publication, anywhere in the world before the [insert date of invention]. [A description is a "printed publication" only if it was publicly accessible.]
3. Stanacard has lost her or his rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by Stanacard or anyone else, more than a year before [insert date], which is the effective filing date of the application for mthe '156 patent. An invention was patented by another if the other patent describes the same invention claimed by Stanacard to a person having ordinary skill in the technology.
4.  Stanacard has lost her or his rights if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before [insert date], which is the effective filing date of the application for the '156 patent. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.
5. Stanacard has lost his or her rights if he or she abandoned the invention.
6. Stanacard has lost her or his rights if she or he had already obtained a patent for the invention in a foreign country before the filing date of the application in the United States or the patent application was filed in a foreign country more than a year before the filing date of the application for the patent in the United States.

---

[46] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 4.3b Anticipation, at 49 (2013)

7. An invention is not new if it was described in a published patent application filed by another in the United States [or under the PCT system and designated the United States, and was published in English] before [insert date of invention].

8. An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States [or under the PCT system and designated the United States, and was published in English] and the application was filed before [insert date of reduction to practice or the filing date of the application for the '156 patent].

9. Stanacard is not entitled to the '156 patent if [named inventor] did not himself invent the invention.

10. An invention is not new if the invention was made by someone else in the United

States before the invention was made by Stanacard and the other person did not abandon, suppress, or conceal the invention.

If an interference proceeding has been declared, additional instructions should be given on this issue.

B.7.f. NOVELTY - GENERALLY[47]

One of the requirements for a valid patent is that the invention defined in the claims must be new. This is known as the requirement of novelty. Defendant argues that the patented claim is invalid for lack of novelty because the patented claim was anticipated by prior art. In order to prevail on this defense, the defendant must prove anticipation by clear and convincing evidence.

In order for a potential claim to have been anticipated, you must find that the earlier invention completely embodied the same process or product as the patented claim and that all of the elements recited in the patented claim were previously found in exactly the same situation and united in the same way to perform the identical function. Put another way, each and every element of the patented claim must have been either inherent or expressly disclosed in a single prior invention or in a single prior art reference.

You may not combine two or more items of prior art to make out an anticipation.
In determining whether every one of the elements of the claimed invention is found in the prior art, you should take into account what a person of ordinary skill in the art would have understood from his or her examination of that prior art.

If these requirements have not been met, then the patented claims are not invalid by reason of anticipation. By contrast, if these requirements have been met, you should next consider whether the defendant has satisfied its burden of proving how the patented claims were anticipated.

---

[47] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-16 : VirnetX v. Cisco Sys., Inc., 767 F.3d 1308, 1323–1324 (Fed. Cir. 2014); Whitserve, LLC v. Computer Packages, Inc., 694 F.3d 10, 15–16 (Fed. Cir. 2012); Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565 (Fed. Cir. 1991)).

<u>B.7.g. VALIDITY – THE CLAIMS</u>[48]

<u>4.3c OBVIOUSNESS</u>

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent [at the time the invention was made] or [before the filing date of the patent].[49]

[alleged infringer] may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the [invention was made] or [patent was filed] in the field of [insert the field of the invention].

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field [of the invention] that someone would have had at the time the [invention was made] or [patent was filed], the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention [or the patent's filing date] there was a reason that would have prompted a person having ordinary skill in the field of [the invention] to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention [or the patent's filing date].

---

[48] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 4.3c Obviousness, at 51 (2013)
[49] The "at the time invention was made" standard is used for patents that were filed before March 16, 2013. For patents filed on or after March 16, 2013, the appropriate standard is "before the effective filing date of the claimed invention."

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

a. Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the invention satisfied a long-felt need;

c. Whether others had tried and failed to make the invention;

d. Whether others invented the invention at roughly the same time;

e. Whether others copied the invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the invention;

g. Whether the invention achieved unexpected results;

h. Whether others in the field praised the invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j. Whether others sought or obtained rights to the patent from the patent holder; and

k. Whether the inventor proceeded contrary to accepted wisdom in the field.

<u>B.7.h. LEVEL OF ORDINARY SKILL</u>[50]

I have referred in these instructions to a person of ordinary skill in the art. What do I mean by such a person? The person of ordinary skill is a hypothetical person that is presumed to be one who is aware of all pertinent prior art. While you may consider the skill of the actual inventor, it is not the only factor that you should consider because inventors may possess something that sets them apart from those of ordinary skill in the art.

Factors to be considered in determining what is the level of ordinary skill in the pertinent art include all of the evidence submitted by the parties that show:

1. the education level of the inventor and of others working in the field;

2. the types of problems encountered in the art;

3. the sophistication of the technology in the field;

4. the activities of others;

5. prior art solutions to the problems encountered by the inventor; and

6. the rapidity of innovation in the field. [51]

---

[50] Matthew Bender, Modern Federal Jury Instructions, Form 485A-86-26 United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554 (Fed. Cir. 1997)).
[51] Authority: United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554 (Fed. Cir. 1997)

## B.7.i. DIFFERENCES BETWEEN PRIOR ART AND INVENTION[52]

The next factual issue you must consider is what are the differences between the prior art and the invention.

The defendant has the burden to show that the prior art taken as a whole suggests the obviousness of making the combination that is in the form of the patented invention. In determining what, if any, differences there are between the prior art and the patented invention, you must consider the prior art as it appeared to a person of ordinary skill in the art at the time (for patents issued prior to Mar. 16, 2013: the invention was made) (for patents issued on or after Mar. 16, 2013: the patent application was filed).

You cannot use hindsight to reconstruct any of the prior art devices or materials, nor can you assemble the invention from parts made up of individual elements of the prior art devices, unless it would have been obvious to do so at the time to one of ordinary skill in the art.[53]

---

[52] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-25 United States Supreme Court: KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007); Seventh Circuit Pattern Civil Jury Instruction 11.3.6).
[53] Authorities: United States Supreme Court: KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 421, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007); Seventh Circuit Pattern Civil Jury Instruction 11.3.6

<u>B.7.j. INVENTORSHIP</u>[54]

[This instruction should only be given in the event the alleged infringer has contended that the patent suffers from improper inventorship.]

In this case, [alleged infringer] contends that the '156 patent is invalid because of improper inventorship. A patent is invalid if it fails to meet the requirement that all of the actual inventors, and only the actual inventors, be named as inventors in the patent. This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of at least one or more of the claims of the patent [even if that claim has not been alleged to be infringed]. Whether the contribution is significant is measured against the scope of the full invention.

If someone only explains to the actual inventors well-known concepts or the current state of the art, he or she is not an inventor. Merely helping with experimentation, by carrying out the inventor's instructions, also does not make someone an inventor. What is required is some significant contribution to the idea claimed.

Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent. Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately the time of their inventive effort.[55]

---

[54] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 4.3d Inventorship, at 54 (2014)
[55] Authorities
35 U.S.C. §§ 102, 256; *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998) ("If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid."); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976, 980-81 (Fed. Cir. 1997) (applying "clear and convincing evidence" standard to inventorship claims and finding plaintiff who offered suggestions to named inventors was not an inventor); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

## B.5 EQUITABLE DEFENSES

## B.8.a. INEQUITABLE CONDUCT[56]

Every applicant for a patent has a duty of candor and good faith in its dealings with the Patent Office. When a person involved in filing a patent application supplies false information, or fails to supply material information, and does so with an intent to deceive the Patent Office, he or she may commit what is called "inequitable conduct." When inequitable conduct occurs during the examination of an application by the Patent Office, any patent that issues from that application is unenforceable. This means that the patent holder may not prevent others from using the invention covered by the patent and may not collect damages from those who use the invention covered by the patent.

The defendant contends that the plaintiff engaged in inequitable conduct before the Patent Office and that the patent is therefore unenforceable. The question of whether the plaintiff engaged in inequitable conduct is a question of law for me to decide. However, I will decide that question based on whether you find that the following facts have been proved by clear and convincing evidence:

(1)  that the applicant supplied false information to the Patent Office, or failed to supply information;

(2)  that any such disclosure or omission was material; and

(3)  that the applicant acted with intent to deceive the Patent Office.

It is for you to decide based on the evidence or lack of evidence whether the applicant supplied the information claimed to be false or failed to supply the information in question.

Information is material if the Patent Office would not have allowed patent (or claim) to issue had it been aware of the truth regarding that information, or in the case of an omission, had it been aware of the undisclosed information. Thus, in assessing materiality, you must consider whether the Patent Office would have allowed the patent or claim to issue had it been aware of the true facts surrounding the disclosure or omission. In making this determination whether the information was material, you are to apply the preponderance of the evidence standard because this is the standard used by the Patent Office when assessing whether a claim should issue.

(If applicable: You may also find materiality if you conclude that the applicant has engaged in an affirmative act of egregious misconduct. One example of such conduct is the filing of an unmistakably false affidavit.)

(If applicable: The Patent Office also uses a different method of claim construction than we use in District Court. Specifically, it gives claims their broadest reasonable construction. Accordingly, I will provide you with a new construction of the claim that you are to use only for

---

[56] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-32 : American Calcar, Inc. v. American Honda Motor Co., 651 F.3d 1318, 1332–1333 (Fed. Cir. 2011); Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc)).

purposes of determining materiality.)

Specific intent requires that the applicant acted with the purpose of deceiving the Patent Office. Thus, when the alleged misconduct is the nondisclosure of information, specific intent exists when the applicant made a deliberate decision to withhold information that the applicant knew was material. When the applicant is alleged to have made a false disclosure, the applicant must have made a deliberate decision to supply false information. In either case, you may find specific intent only if you conclude that the applicant acted with the purpose of deceiving the Patent Office.

Direct proof of a person's intent to deceive is almost never available. It would be a rare case when it could be shown that a person wrote or stated that he committed an act with such an intent. Such direct proof is not required. The question of intent, though subjective, may be established by circumstantial evidence, based on a person's outward manifestations, his words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence, together with the rational and logical inferences that may be drawn from them.

Based on your findings of whether the misrepresentation was made, its materiality and the applicant's intent, the court will make the ultimate determination of whether the applicant engaged in inequitable conduct as a matter of law.[57]

---

[57] Authority: American Calcar, Inc. v. American Honda Motor Co., 651 F.3d 1318, 1332–1333 (Fed. Cir. 2011); Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc)

B.8.b. LACHES[58]

Defendants contend that Stanacard is not entitled to recover damages for acts that occurred before it filed a lawsuit because: (1) Stanacard delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) [alleged infringer] has been or will be prejudiced in a significant way due to Stanacard's delay in filing the lawsuit. This is referred to as laches. [alleged infringer] must prove delay and prejudice by a preponderance of the evidence.

Whether Stanacard's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay. There is no minimum amount of delay required to establish laches. If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. This presumption shifts the burden of proof to Stanacard to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if Stanacard presents such evidence, the burden of proving laches remains with [alleged infringer]. Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to [alleged infringer]. Facts and circumstances that can justify a long delay can include:

(1) being involved in other litigation during the period of delay;
(2) being involved in negotiations with [alleged infringer] during the period of delay;
(3) poverty or illness during the period of delay;
(4) wartime conditions during the period of delay;
(5) being involved in a dispute about ownership of the patent during the period of delay; or
(6) minimal amounts of allegedly infringing activity by [alleged infringer] during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if [alleged infringer] suffered material prejudice as a result of the delay. Prejudice to [alleged infringer] can be evidentiary or economic. Whether [alleged infringer] suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in [alleged infringer] not being able to present a full and fair defense on the merits to Stanacard's infringement claim. Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness(es), the unreliability of memories about important events because they occurred in the distant past, or other similar types of things. Economic prejudice is determined by whether or not [alleged infringer] changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if [alleged infringer] could have switched to a noninfringing product if sued earlier), and also whether [alleged infringer]'s losses as a result of that change in economic position likely would have been avoided if Stanacard had filed this lawsuit sooner. In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances. Thus, you may find that laches does not apply if there is no evidence establishing

---

[58] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 5.2  Laches, at 57 (2013)

each of the three elements noted above (unreasonable delay, lack of excuse or justification, and significant prejudice). You may also find that even though all of the elements of laches have been proved, it should not, in fairness, apply, given all the facts and circumstances in this case.[59]

---

[59] Authorities

35 U.S.C. § 282; *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773-74 (Fed. Cir. 1995); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) (en banc).

<u>B.8.c. UNCLEAN HANDS</u>[60]

       The owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. This is referred to as "unclean hands," and it is a defense that [alleged infringer] contends precludes any recovery by Stanacard in this lawsuit.

       You must consider and weigh all the facts and circumstances to determine whether you believe that, on balance, Stanacard acted in such an unfair way towards [alleged infringer] or the Court in the matters relating to the controversy between Stanacard and Zaytsev and Palatkevich that, in fairness, Stanacard should be denied the relief it seeks in this lawsuit.  Defendants must prove unclean hands by a preponderance of the evidence.[61]

---

[60] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 5.5 Unclean Hands, at 61 (2014)

[61] Authorities

35 U.S.C. § 282; *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933) (affirming dismissal of patent holder's complaints for unclean hands from suppressing evidence of prior use in another litigation); *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369 (Fed. Cir. 2001) (affirming district court's finding of unclean hands when inventor added new material to signed and dated pages, but vacating judgment of unenforceability because unclean hands do not nullify grant of personal property).

<u>B.9. PATENT DAMAGES</u>

<u>B.9.a. INTRODUCTION</u>[62]

If you find that [alleged infringer] infringed any valid claim of the '156 patent, you must then consider what amount of damages to award to Stanacard. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate Stanacard for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Stanacard in approximately the same financial position that it would have been in had the infringement not occurred.

Stanacard has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Stanacard establishes that it more likely than not suffered.

There are different types of damages that Stanacard may be entitled to recover. In this case, Stanacard seeks lost profits, price erosion, and a reasonable royalty. Lost profits consist of any actual reduction in business profits Stanacard suffered as a result of [alleged infringer]s' infringement. A reasonable royalty is defined as the money amount Stanacard and [alleged infringer] would have agreed upon as a fee for use of the invention at the time prior to when infringement began (without the threat of litigation).

I will give more detailed instructions regarding damages shortly. Note, however, that Stanacard is entitled to recover no less than a reasonable royalty for each infringing sale.

---

[62] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 6.1 Damages - Introduction, at 62 (2014)

## B.9.b. RESOLUTION OF DOUBTS[63]

If you find that infringement occurred, you must award all damages that can be proven with "reasonable certainty." Reasonable certainty does not require proof of damages with mathematical certainty. However, you may not award damages based on conjecture.

---

[63] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-34.

<u>B.9.c. LOST PROFITS DEFINED</u>[64]

The plaintiff has argued that he should be awarded the amount of profits he lost because of the alleged infringement.

It is the plaintiff's burden to prove by a reasonable probability that the infringement caused his lost profits. Lost profits may occur in the form of diverted sales, eroded prices, or increased expenses. Therefore, to prove lost profits, the plaintiff must establish by a reasonable probability that he would have made the sales the infringer made, charged higher prices, or incurred lower expenses "but for" the infringement.[65]

---

[64] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-37 : Versata Software, Inc. v. SAP America, Inc., 717 F.3d 1255, 1263–1264 (Fed. Cir. 2013); Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269 (Fed. Cir. 2011)).

[65] Authority: Versata Software, Inc. v. SAP America, Inc., 717 F.3d 1255, 1263–1264 (Fed. Cir. 2013); Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc., 637 F.3d 1269 (Fed. Cir. 2011)

### B.9.d. LOST PROFITS – "BUT FOR" TEST[66]

In this case, Stanacard seeks to recover lost profits for some of [alleged infringer]'s sales of [infringing product], and a reasonable royalty on the rest of [alleged infringer]'s sales.

To recover lost profits (as opposed to reasonable royalties), Stanacard must show a causal relationship between the infringement and Stanacard's loss of profit. In other words, Stanacard must show that, but for the infringement, there is a reasonable probability that Stanacard would have earned higher profits. To show this, Stanacard must prove that, if there had been no infringement, [it would have made some portion of the sales that [alleged infringer] made of the infringing product,] [it would have sold more products that are functionally related to those products,] [it would have sold its products at higher prices,] [or it would have had lower costs].

Stanacard is entitled to lost profits if it establishes each of the following:

(1) That there was a demand for the patented product.
(2) That there were no available, acceptable, noninfringing substitute products, or, if there were, its market share of the number of the sales made by [alleged infringer] that Stanacard would have made, despite the availability of other acceptable noninfringing substitutes.
(3) That Stanacard had the manufacturing and marketing capacity to make any infringing sales actually made by [alleged infringer] and for which Stanacard seeks an award of lost profits—in other words, that Stanacard was capable of satisfying the demand.
(4) The amount of profit that Stanacard would have made if [alleged infringer] had not infringed.[67]

However, if you find that the plaintiff would not have made the sales which the defendant in fact made, you may not award lost profits. Instead, you must award an amount based on a reasonable royalty which will be explained next.

---

[66] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 6.2 Lost Profits – "But For" Test, at 64 (2014)
[67] Committee Comments and Authorities
35 U.S.C. § 284; *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Carella v. Starlight Archery*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

<u>B.9.e. LOST PROFITS – AMOUNT OF PROFIT</u>[68]

A patent holder may calculate its lost profits on lost sales by computing the lost revenue for sales it claims it would have made but for the infringement and subtracting from that figure the amount of additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Certain fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.[69]

---

[68] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 6.2 Lost Profits – Amount of Profit, at 67 (2014)
[69] Authorities
*Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984).

<u>B.9.f. LOST PROFIT – MARKET SHARE[70]</u>

      If a patent holder establishes it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving the patent holder's share of the relevant market, excluding infringing products. A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available. In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market. Products are considered in the same market if they are considered "sufficiently similar" to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.[71]

---

[70] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 6.2 Lost Profits – Market Share, at 68 (2014)
[71] Authorities
*State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1557 (Fed. Cir. 1989); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001).

## B.9.g. LOST PROFITS – PRICE EROSION[72]

Stanacard can recover additional damages if it can establish that it is more likely than not that, if there had been no infringement, Stanacard would have been able to charge higher prices for some of its products. If this fact is established, you may award as additional damages the difference between:

> (A) the amount of profits Stanacard would have made by selling its product at the higher price, and
> (B) the amount of profits Stanacard actually made by selling its product at the lower price Stanacard actually charged for its product.

This type of damage is referred to as price-erosion damage.

If you find that Stanacard suffered price erosion, you may also use the higher price in determining Stanacard's lost profits from sales that were lost because of the infringement. In calculating Stanacard's total losses from price erosion, you must take into account any drop in sales that would have resulted from charging a higher price.

You may also award as damages the amount of any increase in Stanacard's costs, such as additional marketing costs, caused by competition from the infringing product.

---

[72] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 6.4 Lost Profits – Price Erosion, at 70 (2014)

## B.9.h. REASONABLE ROYALTY – ENTITLEMENT[73]

If you find that Stanacard has established infringement, Stanacard is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that Stanacard has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Stanacard a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.[74]

---

[73] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, 6.5 Reasonable Royalty - Entitlement, at 71 (2014)
[74] Authorities
35 U.S.C. § 284; *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009)
(vacating and remanding jury award as excessive); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1998); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc).

<u>INSTRUCTION 86-35 REASONABLE ROYALTY</u>[75]

The owner of a valid patent that has been infringed is entitled to recover enough money so that he will be compensated for the infringement, but in no event less than a reasonable royalty for the use that the infringer made of the invention.

A reasonable royalty is the amount of money a willing patent owner and a willing, prospective licensee would have agreed on at the time the infringement began for a license to make the invention.

In determining a reasonable royalty, it is important to focus on the facts as they existed at the time when the defendant's infringement began. You must assume that the parties would have known that plaintiff's patent was valid, enforceable, and infringed by the defendant.

The issue is what the parties' expectations would have been had they entered an arm's length negotiation for royalties at the time of the infringing activity (without the threat of litigation).

In determining the reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began, which is the time when the royalty would have been negotiated. The following are among the kinds of factors that might have influenced the royalty:

1. whether the patent holder had an established royalty for the particular invention or had terms tending to prove an established royalty for the patent; in the absence of such licensing history by the patent holder, any royalty arrangements that were generally used and recognized in the particular industry at that time;

2. the commercial relationship between the patent owner and the licensee, such as whether they were competitors in the same territory and the same line of business, or whether they are inventor and promoter;

3. the established profitability of the product made under the patent; its commercial success; and its current popularity;

4. whether the patent owner had an established policy and marketing program of either granting licenses or retaining the patented invention as its exclusive right or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

5. The size of the market actually and reasonably anticipated at the time the infringement began;

6. the duration of the patent and the term of the license;

---

[75] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-34 : Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336 (Fed. Cir. 2011); Maxwell v. J. Baker, Inc., 86 F.3d 1098 (Fed. Cir. 1996); Seventh Circuit Pattern Civil Jury Instruction 11.4.4).

7. the rates paid by the licensee for the use of other patents comparable to plaintiff's patent;

8. the nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to when the manufactured product may be sold;

9. the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such sales;

10. the utility and advantages of the patented property over the old modes and patented devices, if any, that had been used for working out similar results;

11. the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

12. the extent to which the infringer used the invention, and any evidence probative of the value of that use;

13. the portion of the profit of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

14. the portion of the realized profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

15. the opinion testimony of qualified experts and of the patent holder, such testimony to be weighed and considered by you in accordance with the instructions that I have previously given you; and

and any other factors, which, in your mind, would have increased or decreased the royalty the infringer would have been willing to pay and the patented owner would have been willing to accept, both acting as normally prudent business people at the time.[76]

---

[76] Authorities: Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336 (Fed. Cir. 2011); Maxwell v. J. Baker, Inc., 86 F.3d 1098 (Fed. Cir. 1996); Seventh Circuit Pattern Civil Jury Instruction 11.4.4

B.9.j. PRESENCE OR ABSENCE OF NON-INFRINGING ALTERNATIVES[77]

In determining a reasonable royalty, you may consider whether the defendant had any noninfringing alternatives, including commercially acceptable noninfringing alternatives, to taking a license from the plaintiff and whether that would have affected the reasonable royalty the parties would have agreed on.[78]

---

[77] Matthew Bender, Modern Federal Jury Instructions, Form 485A-86-36 : Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336 (Fed. Cir. 2011); Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359 (Fed. Cir. 2008)).

[78] Authority: Spectralytics, Inc. v. Cordis Corp., 649 F.3d 1336 (Fed. Cir. 2011); Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359 (Fed. Cir. 2008)

### B.9.k. PUNITIVE AND SPECULATIVE DAMAGES NOT ALLOWED[79]

You must not award plaintiff more damages than are adequate to compensate for the infringement. You must not include an additional amount for the purpose of punishing defendant or setting an example. In considering damages, you must not consider plaintiff's allegations of willfulness, or take into account any evidence relating to those allegations. The consideration of willfulness, if any, is entirely separate from the question of any damages you are asked to determine.

You should not include any amount in your damages award for interest, attorney's fees, or other expenses.

You may not include damages that are speculative, merely possible, or that are based on guesswork.

---

[79] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-40.

## INSTRUCTION 86-41 SPECIAL VERDICT FORM[80]

A special verdict form has been prepared for your convenience to guide you in your deliberations. You will take this form to the jury room.

The answer to each question must be the unanimous answer of the jury. The foreperson will write the unanimous answer of the jury in the space provided opposite each question.

---

[80] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86-41.

GLOSSARY[81]

Some of the terms in this glossary will be defined in more detail in the legal instructions you are given. The definitions in the instructions must be followed and must control your deliberations.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Amendment**: A patent applicant's change to one or more claims or to the specification either in response to an office action taken by an Examiner or independently by the patent applicant during the patent application examination process.

**Anticipation**: A situation in which a claimed invention describes an earlier invention and, therefore, is not considered new and is not entitled to be patented.

**Assignment**: A transfer of patent rights to another called an "assignee" who, upon transfer, becomes the owner of the rights assigned.

**Best Mode**: The best way the inventor actually knew to make or use the invention at the time of the patent application. If the applicant had a best mode as of the time the application was first filed, it must be set forth in the patent specification.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Conception**: The complete mental part of the inventive act which must be capable of proof, as by drawings, disclosure to another, etc.
**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a device or the required steps of a method. A device or method infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product or method that contains the claimed invention.

---

[81] Fed. Cir. Bar Assoc., Model Patent Jury Instructions, Glossary, at 77 (2014)

**Enablement**: A description of the invention that is sufficient to enable persons skilled in the field of the invention to make and use the invention. The specification of the patent must contain such an enabling description.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent. Infringement may be direct, by inducement, or contributory. Direct infringement is making, using, or selling the patented invention without permission. Inducing infringement is intentionally causing another to directly infringe a patent. Contributory infringement is offering to sell or selling an item that is a significant part of the invention, so that the buyer directly infringes the patent. To be a contributory infringer, one must know that the part being offered or sold is designed specifically for infringing the patented invention and is not a common object suitable for noninfringing uses.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the word "requirement."

**Nonobviousness**: One of the requirements for securing a patent. To be valid, the subject matter of the invention must not have been obvious to a person of ordinary skill in the field at the time of the earlier of the filing date of the patent application or the date of invention.

**Office Action**: A written communication from the Examiner to the patent applicant in the course of the application examination process.

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed (or 17 years from the date the patent issued). When the patent expires, the right to make, use, or sell the invention is dedicated to the public. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent and Trademark Office (PTO)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Prior Art**: Previously known subject matter in the field of a claimed invention for which a patent is being sought. It includes issued patents, publications, and knowledge deemed to be publicly available, such as trade skills, trade practices, and the like.

**Prosecution History**: The prosecution history is the complete written record of the proceedings in the PTO from the initial application to the issued patent. The prosecution history includes the office actions taken by the PTO and the amendments to the patent application filed by the applicant during the examination process.

**Reads On**: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

**Reduction to Practice**: The invention is "reduced to practice" when it is sufficiently developed to show that it would work for its intended purpose.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation."

**Royalty**: A royalty is a payment made to the owner of a patent by a nonowner in exchange for rights to make, use, or sell the claimed invention.

**Specification:** The specification is a required part of a patent application and an issued patent. It is a written description of the invention and of the manner and process of making and using the claimed invention.

<u>COPYRIGHT CLAIM</u>

## C.1. COPYRIGHT DEFINED[82]

The term "copyright" is the name for the protection that the law extends to an author of an original work against the unauthorized appropriation of that work by others. The term is derived from the fact that such an author has the exclusive right to copy the work, and therefore may exclude others from copying the work.

The term "author" generally is used to refer to a writer. As used in the law of copyright, however, the term embraces any creator of an original work protected by the copyright laws. The author of a copyrighted work is the owner of the copyright in that work. The term "owner" also includes any person to whom the author may assign, sell, lease, or otherwise transfer the copyright. The owner of a copyright has the right to exclude any other person from reproducing, preparing derivative works, distributing, performing, displaying, or using the work covered by copyright for a specific period of time.

The term "work" refers to any material that is subject to protection under the copyright laws, including a literary work, musical work, dramatic work, pantomime, choreographic work, pictorial work, graphic work, sculptural work, motion picture, audiovisual work, sound recording, architectural work, mask works fixed in semiconductor chip products, or a computer program.[83]

---

[82] Matthew Bender, Modern Federal Jury Instructions, Form 86B-1 17 U.S.C. §§ 101, 106)
[83] Authority: 17 U.S.C. §§ 101, 106.

## C.2. AUTHORSHIP, OWNERSHIP AND LICENSING

## C.2.a. PROOF OF LEGAL AND BENEFICIAL OWNERSHIP OF AN EXCLUSIVE RIGHT[84]

To sue for copy right infringement, plaintiff must be either a legal or beneficial owner of an exclusive right under copyright.

To be a legal owner of a copyright in a work, plaintiff must prove one of two things:

1. Plaintiff is an author of the work, or

2. Plaintiff has legally obtained and held the exclusive right in the work that has allegedly been infringed by the defendant.

To be a beneficial owner of a copyright, plaintiff must prove that she authored the work but then transferred the title to the work to another while retaining the rights to royalties based on sales.

Plaintiff establishes a right to sue for infringement only if she proves by a preponderance of the evidence that she is either a legal owner or a beneficial owner.

---

[84] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.3.1

### C.2.b. OWNERSHIP THROUGH AUTHORSHIP IN A WORK MADE FOR HIRE

Plaintiff asserts that it is an owner of the copyright in the work on the basis that the work was created for plaintiff by another person as a "work made for hire."

1.  Given that Palatkevich was not plaintiff's employee you may find the work to be "work made for hire" if plaintiff proves two things: First, plaintiff must prove there is a written document that confirms the work to have been specifically commissioned. Second, plaintiff must prove that the work is one of the following types:

    a.  A work commissioned for use as a contribution to a collective work
    b.  A work commissioned as part of a motion picture or other audiovisual work,
    c.  A work commissioned as a translation
    d.  A work commissioned as a supplementary work
    e.  A work commissioned as a compilation
    f.  A work commissioned as an instructional text,
    g.  A work commissioned as answer material for a test, or
    h.  A work commissioned as an atlas.

If plaintiff proves by a preponderance of the evidence that the work is a work made for hire, plaintiff is considered the author and, unless otherwise agreed in writing, owns the entire copyright.[85]

---

[85] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.3.6

## 1.3 AUTHORSHIP, OWNERSHIP AND LICENSING

**1.3.8.  Ownership Through Valid Transfer**

Plaintiff claims ownership through a transfer of rights. The owner of a copyright may transfer all or any one of the exclusive rights that I described earlier, but the transfer must be made in writing and signed by either the owner of the rights conveyed or the owner's authorized agent. An oral transfer that is later reduced to such a signed writing satisfies this requirement.

In addition to proving the existence of a written document confirming the transfer of rights, plaintiff must prove either (1) that she exclusively owned the right at the time defendant allegedly infringed that right; or (2) that she expressly obtained the right to sue for infringement based upon acts that occurred before she obtained ownership.[86]

---

[86] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.3.8

<u>1.4 SCOPE OF PROTECTION</u>

**1.4.3.  Types of Unprotected Matter**

There are various types of unprotected matter. They include:

1.  A portion of a work that is not original to the author;
2.  A portion of the work that is in the public domain;
3.  An idea, concept, process, procedure, system, method of operation, principle, fact, actual event, or method expressed or described in a work, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied;[87]
4.  A particular means of expression that is unprotected under the doctrine of merger;
5.  Content (usually fictional) that is unprotected under the doctrine of scènes à faire; or
6.  Parts of a computer program considered to be ideas, common programming techniques, or that are required in order for the program to perform its function efficiently and effectively given the computer hardware and other software with which the program operates.

I will describe these types of unprotected matter further in other instructions.[88]

---

[87] Authority: 17 U.S.C. §§ 120, 901.
[88] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.4.3

INSTRUCTION 86B-8 EFFECT OF REGISTRATION OF COPYRIGHT[89]

Copyright automatically exists in an original work the moment it is created. A copyright owner may register the copyright by delivering to the Copyright Office of the Library of Congress a copy of the copyrighted work. After examination and a determination that the material deposited constitutes copyrightable subject matter and that legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner. Failure to obtain registration of the copyright, however, has no effect on the validity of the copyright or the owner's rights under the copyright.

The plaintiff's certificate of registration of the copyright constitutes evidence of the plaintiff's ownership of the copyright, and of the plaintiff's right to exclude others from copying the work. However, registration of a copyright is not conclusive as to the validity of the copyright. You may also consider any evidence offered by the opposing party that the registered copyright is invalid. From such evidence, you are free to find that a registered copyright is not valid, in accordance with the instruction on the defenses asserted by the defendant, if you find that the defendant has proved by a preponderance of the evidence that the copyright is invalid. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the registered copyright is invalid.[90]

---

[89] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-8 17 U.S.C. §§ 209, 410(C)).
[90] Authority: 17 U.S.C. §§ 209, 410(C)

INSTRUCTION 86B-9 PURPOSE OF COPYRIGHT PROTECTIONS AND PROHIBITION OF INFRINGEMENT[91]

In this case, the plaintiff, Stanacard, seeks to recover money damages from the defendants, for what the plaintiff claims to be copyright infringement. The defendant denies infringing the copyright, and contends that the copyright is invalid. The legal principles regarding the law of copyright infringement discussed in these instructions result from attempts to balance certain conflicting policy objectives. On the one hand, the creator of an original work has the right to reap the benefits of his or her creativity and effort. On the other hand, progress requires that everyone have the right to develop and create new works using the same ideas and subjects. The copyright law attempts to strike a balance between these two values, protecting so much of the author's original work as embodies the author's own particular form of expression, but not so much as would prevent others from using the same ideas, themes, and subjects in their own forms of expression.

Because of the conflicting policy objectives involved in cases of this type, each case must be decided largely on its specific facts. You, the jury, are the judge of the facts.[92]

---

[91] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-9 : Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir. 1984))

[92] Authority: 2nd Circuit: Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir. 1984), cert. denied, 469 U.S. 982 (1984).

<u>INSTRUCTION 86B-12 ORIGINIALITY OF WORK</u>[93]

In this case, the plaintiff claims that the defendant has infringed the plaintiff's copyright in the SmartDial system. In determining whether the plaintiff has established a copyright in the SmartDial system, the first question for you, the jury, to decide is whether the plaintiff has proved that the SmartDial system is an original work of authorship. Under the copyright law, originality means that the work was independently created by the author and not copied from other works. The SmartDial system might resemble other works, but if the author independently conceived the work, or at least significant parts of it, then the work is original.

The work need not be completely or entirely original. It may include or incorporate elements taken from prior works, from works used with their owner's permission, or from works in the public domain. If you find that the SmartDial System involves variations on preexisting works, then it is only to the original elements of the work that copyright protection will extend. In this context, there is no precise rule as to how much of the work must have originated from the author in order for the plaintiff to claim copyright protection. Trivial or marginal originality is not sufficient. Instead, the author must make some substantial original contribution or variation distinguishable from prior works. The original contribution must be more than a mere technical or mechanical variation.[94]

---

[93] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-12 Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir. 1984)).
[94] Authority: Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir. 1984)

## INSTRUCTION 86B-10 ELEMENTS OF LIABILITY FOR COPYRIGHT INFRINGEMENT; BURDEN OF PROOF[95]

In this case, the plaintiff claims that the defendant has infringed the plaintiff's copyright in the Stanacard system. To find liability for copyright infringement, you, the jury, must find from a preponderance of the evidence that:

(1) the plaintiff is the owner of a valid copyright in the Stanacard system; and

(2) the defendant copied original elements of the Stanacard system.

The plaintiff has the burden of proving each of these elements by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the plaintiff has proved each element. If you find that the plaintiff has proved these elements by a preponderance of the evidence, you may then find the defendant liable for copyright infringement. You will then consider the issue of damages under separate instructions.[96]

---

[95] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-10 : Feist Publications v. Rural Tel. Serv. Co., 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)).

[96] Authority: Feist Publications v. Rural Tel. Serv. Co., 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)

<u>INSTRUCTION 86B-14 COPYING; ACCESS TO WORK AND SUBSTANTIAL SIMILARITY</u>[97]

In this case, the plaintiff claims that the defendant has infringed the plaintiff's copyright in the SmartDial system. If you have found that the plaintiff has established a copyright in the SmartDial system, you must also find that the plaintiff has proven by a preponderance of the evidence that the defendant has copied original elements of the SmartDial system.

The plaintiff may demonstrate copying by direct or circumstantial evidence. An example of direct evidence of copying would be an admission by the defendant or one of its agents or employees that the SmartDial system was copied by the defendant. The lack of any direct evidence of copying, however, is the norm in a copyright infringement action, so that such an absence of proof does not require you to find for the defendant.

Circumstantial evidence of copyright infringement means the proof of facts that support or require a logical inference that copying must have taken place. If you find by a preponderance of the evidence that: (1) the defendant had access to the SmartDial system; and (2) there are substantial similarities between the defendant's work and original elements of the SmartDial system, you are instructed to find copying, unless the defendant establishes that its work was independently created or some other explanation for the similarities.

Access to Plaintiff's Work. On the subject of access, the plaintiff must demonstrate that the creator of the defendant's work had a reasonable opportunity to view the SmartDial system. The plaintiff need not prove that the defendant actually saw the SmartDial system, but only that the defendant had some reasonable opportunity to do so.

Substantial Similarity. On the subject of substantial similarity, the plaintiff must demonstrate that: (1) the ideas in the SmartDial system and the defendant's work are substantially similar; and (2) the expression of ideas in the SmartDial system and the expression of ideas in defendant's work are substantially similar. The test for expression of ideas is whether an ordinary reasonable person would find the total concept and feel to be substantially similar.[98]

---

[97] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-14 Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir. 1984), cert. denied, 469 U.S. 982 (1984)).
[98] Authority: Aldon Accessories Ltd. v. Spiegel, Inc., 738 F.2d 548 (2d Cir. 1984), cert. denied, 469 U.S. 982 (1984)

<u>1.5 INFRINGEMENT</u>

**1.5.4.  Copying—Indirect Evidence: Access and Probative Similarity**

Plaintiff may seek to prove copying indirectly by proving both of the following by a preponderance of the evidence:

1.  Defendant had access to plaintiff's copyrighted work; and

2. There are similarities between defendant's work and plaintiff's work that, given all the circumstances, make it more likely than not that defendant copied parts of his work from plaintiff's work. This is called "probative similarity."

Defendant had access to plaintiff's work if he had a reasonable opportunity to see plaintiff's work before creating his work.

You may consider any evidence that is relevant to determine whether plaintiff has proved both these elements by a preponderance of the evidence. If plaintiff has done so, then defendant bears the burden of presenting evidence that he created his work independently, as I will explain to you shortly. If defendant presents such evidence, you should decide, based on all the evidence, whether plaintiff has proved by a preponderance of the evidence the elements of infringement that I have presented to you.[99]

---

[99] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.5.4

<u>1.5 INFIRNGEMENT</u>

**1.5.8.  Sufficiency of Copying**

If you conclude that plaintiff has proven, whether by direct or circumstantial evidence, that defendant has copied matter from plaintiff's work, you must then determine whether the matter copied is sufficient to constitute infringement. You should find infringement if the matter copied from plaintiff's work, as viewed by an ordinary reasonable observer, includes substantial protected matter. You should not find infringement because of the copying of unprotected matter, such as ideas. You should find infringement only if an ordinary reasonable observer would find that the protected matter copied from plaintiff's work is substantial.

Substantiality is determined by considering both the amount, or quantity, and the significance, or quality, of the protected matter copied by defendant. You should not find infringement if only a small amount of relatively unimportant protected matter has been copied. However, the significance of the copied protected matter to plaintiff's work may outweigh the fact that not a large amount of material has been copied. Because the organization of the matter in a work may itself be protected, in determining whether substantial protected matter has been copied, you may take into account similarities or dissimilarities in the organization of protected matter that has been copied.

Substantiality is not determined simply by the percentage of plaintiff's work that defendant copied. In order for you to find infringement it is not necessary to find that a large fraction of plaintiff's work was copied. Similarly, substantiality is not determined by the percentage of defendant's work that was not copied. It is not a defense to infringement that a large fraction of defendant's work was created independently.[100]

---

[100] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.5.8

<u>1.5 INFIRNGEMENT</u>

**1.5.10. Computer Programs—Abstraction-Filtration-Comparison Test**

In order to determine whether there has been infringement of the copyright in plaintiff's computer program, you must apply the three-part "abstraction-filtration-comparison" test. I will first explain to you why this three-part test is necessary.

A computer program enables a computer to perform certain functions. It does so by causing the computer to carry out certain procedures in prescribed sequences. Those sequences of operations enable the computer to operate on the data input into it so as to create certain output. The output will take different forms, depending on the purpose of the program. For example, the output may be in the form of numbers, if the program's purpose is to do mathematical calculations, or it may take another form, such as a picture in the case of a drawing program. The sequence of operations performed by a computer is controlled by computer programs installed on it. A computer program is basically a set of instructions that determines what operations, or procedures, a computer will carry out given certain input.

A computer is simply an electronic machine. In order to control a computer, a program must be in the form of a sequence of 0's and 1's. The language of 0's and 1's is called "machine language," and a program in that form is called "machine code" or "object code." However, it would be too difficult for programmers to write programs in machine language. Instead, programs are written using specially designed languages, called "programming languages," which are easier to understand and are made for writing instructions that make computers carry out various procedures. A program written in a programming language is called "source code." A source code program is converted by a special kind of program, either a "compiler" or an "interpreter," into object code form. The object code program, installed in a computer, then controls the step-by-step operations of a computer.

We can, therefore, talk about a computer program in either its object code form or its source code form. However, we can also talk about a program in other ways, by describing the procedures that the program causes a computer to perform. At the lowest level of detail, we could track every step the computer takes under the control of the program, such as the step of moving the contents of one location in the computer's memory to another location. We could also describe the computer's operations at a slightly higher level of detail, such as the procedure of finding the sum of two numbers. We can continue to describe the computer's operations at higher and higher levels, up to the highest level, which is the ultimate purpose of the program. For example, if a program was intended to calculate the Dow Jones average at the end of a day, using as input all the day's New York Stock Exchange stock transactions, the highest level of description would be "calculate the Dow Jones average."

The term used for describing the operations of a computer at higher and higher levels is "abstraction." At the level of object code, there is no abstraction, because the object code controls each smallest step of the computer. As we go to higher levels we abstract from, that is, leave out more and more detail of, the procedures that the program performs, until we reach the highest level of abstraction, at which we simply describe the ultimate purpose of a program, such as calculating

the Dow Jones average or, for a word-processing program, creating a document.

Abstraction is the first part of the three-part test for infringement. When we are determining whether a computer program has been infringed, we have to take into account the fact that, just as a program can be described at various levels, it can be copied at various levels. If someone wants to copy another's program, he might simply copy the program's object code or source code. But he might also, without copying the literal object code or source code itself, copy the substance of each instruction that the code gives the computer, perhaps paraphrasing the source code (just as one might paraphrase a standard literary work), or perhaps using a different programming language. Or he might copy the program at higher levels of abstraction by, for example, copying the way in which the low-level procedures prescribed by the program are organized and work together so as to carry out higher-level procedures. Since a typical commercial computer program contains thousands of procedures, which are written and organized so as to operate in certain sequences and combinations, there are many ways in which parts of a program can be copied so that another programmer does not have to create his work anew. Just as someone may infringe the copyright in a short story if he copies the story but paraphrases each paragraph, someone may infringe the copyright in a computer program by copying, at some level of abstraction, the procedures that it causes the computer to carry out, or the sequence or organization of those procedures. [You have heard testimony about parts or aspects of those procedures, involving concepts such as control flow, data flow, data structures, and parameters, that you may take into account when you are determining whether defendant has copied such procedures or their organization from plaintiff's program.]

The abstraction-filtration-comparison test is necessary in order to detect infringement at levels of abstraction above that of object code or source code. In the abstraction part of the test, we can describe a computer program at various levels of abstraction, from the levels of object code and source code all the way up to the program's ultimate purpose. However, in this case it is necessary for you to consider the program only at levels of abstraction at which plaintiff has claimed that there is infringement.

The second part of the three-part test is filtration. Computer programs, like standard literary works, contain unprotected as well as protected matter, and it is only the copying of protected matter that counts toward infringement. Therefore, at each level of abstraction that you consider, it is necessary to "filter out" unprotected matter. As in the case of standard literary works, ideas are unprotected matter. However, computer programs can also contain other types of unprotected matter. Just as we want to leave ideas unprotected by copyright so that they are available for use by others, we do not want copyright protection to extend to a program's functionality. Although a programmer may have written a program that adequately performs a certain function, we want other programmers to be able to write other programs that perform the same function. The functions performed by a program are therefore unprotected matter.

In addition, at a certain level of abstraction the procedures that a program uses to carry out its functions are also unprotected. Just as copyright protection does not extend to the idea or function of creating a document, it does not extend to the procedure of putting letters onto the computer monitor or to the other procedures that it is necessary for a word processor to perform. Therefore, at a certain level of abstraction, similar to the level of ideas, another person can copy

90

the procedures that a program causes a computer to carry out, because they are unprotected matter. Those procedures are not likely to have been created by the plaintiff in any case. Standard procedures, methods, and programming techniques that programmers regularly use are not protected by copyright.

There are also other aspects of a computer program that are not protected by copyright. Each computer must have an operating system program, which controls its basic operations such as the computer's use of its memory, accepting input, creating files, or producing output to a monitor. Application programs, such as word processing or spreadsheet programs, are designed to run on particular operating systems. Those aspects of an application program that are necessary in order for it to be able to run on a certain operating system, or are necessary for it to be able to operate with other programs, are unprotected matter. There are also characteristics that a program may not be required to have in order to run at all, but which it must have if it is to operate reasonably efficiently. Those characteristics are also unprotected matter. In general, aspects of a program that are reasonably required in order for the program to accomplish the functions for which it was designed, or that are reasonably required by external factors such as hardware or other software, or for reasonably efficient operation, are not protected by copyright. However, when there are reasonable alternatives to elements of a program that do not involve a significant loss of functionality or efficiency, you may find such elements to be protected matter.

The filtration part of the abstraction-filtration-comparison test filters out unprotected matter at each level of abstraction that you are concerned with. The third part of the abstraction-filtration-comparison test is comparison. Here, at each level of abstraction that you are considering, you must compare the protected matter in plaintiff's copyrighted program—the part that has not been filtered out—with defendant's program. When you make that comparison, you should take into account any relevant expert testimony presented by plaintiff or defendant. You must decide whether, taking into account copying at all levels of abstraction, plaintiff has proved by a preponderance of the evidence that defendant copied substantial protected matter from plaintiff's program. A finding of substantial copying of protected matter at any level of abstraction, or a combination of levels, is sufficient for infringement.[101]

---

[101] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.5.10

<u>1.5 INFIRNGEMENT</u>

**1.5.12. Contributory Infringement**

Plaintiff contends that defendant has engaged in contributory infringement of plaintiff's copyright. Contributory infringement is a distinct claim from direct infringement. To prove contributory infringement, plaintiff must prove the following three elements by a preponderance of the evidence:

1. Another person—in this case, Palatkevich—directly infringed plaintiff's copyright;
2. The other defendants knew or should have known of the infringing activity of Palatkevich; and
3. The other defendants induced, caused, or materially contributed to the infringing activity of Palatkevich.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the plaintiff has proved each of these elements.[102]

If plaintiff fails to prove any of these elements, you should find for defendant.[103]

---

[102] Authority: Sony Corp. v. Universal City Studios, 464 U.S. 417, 437-438, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984)
[103] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.5.12

<u>1.5 INFIRNGEMENT</u>

**1.5.13. Vicarious Infringement**

Plaintiff contends that defendant vicariously infringed plaintiff's copyright. Vicarious infringement is a distinct claim from direct infringement and contributory infringement. To prove vicarious infringement, plaintiff must prove the following three elements by a preponderance of the evidence:

1. Another person—in this case Palatkevich  — directly infringed plaintiff's copyright;
2. The other defendants profited from or had a financial interest in the infringing activities of Palatkevich; and
3. The other defendant had the right and ability to supervise or control the infringing activities of Palatkevich.

If plaintiff fails to prove any of these elements, you should find for defendant. However, if plaintiff proves these elements, she need not prove that defendant knew of the infringement.[104]

---

[104] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.5.13

<u>1.6. DEFENSES</u>

**1.6.1.  Independent Creation**

Defendant denies that he copied matter from plaintiff's work, and has offered evidence that he created his work independently; in other words, without copying.
If you find that evidence presented by defendant, weighed along with all the other evidence in this case, makes it more likely defendant created his work independently than that he copied from plaintiff, you should find in favor of defendant.[105]

---

[105] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.6.1

INSTRUCTION 86B-20 GENERAL DAMAGES INSTRUCTION[106]

If you find for the plaintiff on plaintiff's copyright infringement claim, you must determine plaintiff's damages. Two kinds of damages may be considered in this case: (1) compensatory damages, and (2) punitive damages.

Compensatory damages consist of the plaintiff's direct economic losses and out-of-pocket expenses resulting from the effect of the defendant's infringement of the copyright. In other words, compensatory damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant's infringement. The basic question for your consideration is: What is the amount of money required to right the wrong done to the plaintiff by the defendant?

Punitive damages consist of that amount of money awarded by you that is not to be considered as compensation to the plaintiff for the wrong done, but that instead serves as a punishment to the defendant and as a deterrent to others not to engage in such conduct. You may in your discretion award punitive damages if, but only if, you find by a preponderance of the evidence that: (1) the plaintiff had registered the copyright prior to any infringement; and (2) the defendants were guilty of malice in infringing the copyright. "Malice" means conduct which is known or intended by the defendants to cause injury to the plaintiffs or is carried on by the defendants with a conscious disregard for the rights of others. The law provides no fixed standards as to the amount of such punitive damages, but leaves the amount to the jury's sound discretion, exercised without passion or prejudice.

The plaintiff has the burden of proving damages by a preponderance of the evidence.[107]

---

[106] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-20 (17 U.S.C. § 504).
[107] Authority: 17 U.S.C. § 504

<u>INSTRUCTION 86B-21 COMPENSATORY DAMAGES</u>[108]

The copyright owner is entitled to recover the actual damages suffered as a result of the infringement. Actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the market value of the copyrighted work caused by the infringement. The reduction in the market value of the copyrighted work is the amount a willing buyer would have paid to a willing seller at the time of the infringement for the use made by the defendant of the plaintiff's work.[109]

---

[108] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-21 17 U.S.C. § 504 and Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512-513 (9th Cir. 1985)).

[109] Authority: 17 U.S.C. § 504 and Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512-513 (9th Cir. 1985)

<u>INSTRUCTION 86B-22 RECOVERY OF DEFENDANT'S PROFITS</u>[110]

In addition to actual damages, the copyright owner is entitled to any profits attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages.

The defendant's profits consist of the amount of money that the defendant made due to the infringement, after deducting the defendant's expenses in producing and marketing the infringing product. Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of defendant's receipts from the use or sale of any product containing or using the copyrighted work. Expenses are all operating, overhead, and production costs incurred in producing the gross revenue.

The plaintiff is not necessarily entitled to all of the defendant's profits, but only to the part of those profits that is due to the infringement. If the defendant's product was profitable for reasons that had nothing to do with the infringement of the plaintiff's work, then the plaintiff is not entitled to those profits that are not attributable to the infringement. Unless you find that a portion of the profit from the use or sale of a product containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, the total profit is attributable to the infringement.

The plaintiff has the burden of proving gross revenue by a preponderance of the evidence. The defendant has the burden of proving the expenses and the portion of the profit attributable to factors other than the copyrighted work by a preponderance of the evidence.

---

[110] Matthew Bender, Modern Federal Jury Instructions, Form 485a-86B-22 17 U.S.C. § 504 and Sid & Marty Krofft Television Productions v. McDonald's Corp., 562 F.2d 1157 (9th Cir. 1977).)).

<u>1.7 DAMAGES</u>

**1.7.4.  Statutory Damages**

A copyright owner may elect to recover statutory damages for each infringed work that was timely registered. Within certain limits that I will describe below, the statute gives you broad discretion to determine the amount of statutory damages that you find to be just in light of the evidence presented. In deciding what amount is just, you should take into consideration the purposes and factors that I will describe to you.

The general purposes of statutory damages include the following:

1.  Relieving copyright owners of the often difficult burden of proving their actual damages and the defendant's profits;
2.  Providing adequate compensation to the copyright owner and disgorgement of the infringer's benefits from infringement;
3.  Deterring the infringer and others similarly situated from future infringement; and
4.  Where appropriate, punishing the infringer.

Thus, statutory damages are available without proof of plaintiff's actual damages, defendant's profits, or other direct economic effects of the infringement.[111]

---

[111] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.7.4

<u>1.7 DAMAGES</u>

**1.7.5.   Timely Registration Prerequisite to Statutory Damages Award**

The Copyright Act requires that a copyright owner timely register its works with the Copyright Office in order to be eligible for statutory damages. Here, there is a dispute as to whether or not the registration of plaintiff's work was timely.

Plaintiff's registration of the copyright was timely if the infringement began after the effective date of the registration.

The effective date of a copyright registration is the day on which the copyright application, any copies required to be deposited, and appropriate filing fee, all in a form acceptable for registration, were received in the Copyright Office. If all of these items did not occur on the same date, the effective date of the registration is the day on which the last of these items was so received.

If and only if plaintiff proves by a preponderance of the evidence that her registration was timely should you go on to consider statutory damages.[112]

---

[112] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.7.5

<u>1.7 DAMAGES</u>

**1.7.6.  One Statutory Damages Award per Work**

Each timely registered, infringed work is entitled to one award of statutory damages within a certain range specified by Congress, which I will provide to you in a moment. You must make one and only one award of statutory damages for each "work" infringed. This remains true no matter how many infringing copies have been made or how many defendants jointly participated in infringing the work
.

In this case you are to regard each software program as a "work" for purposes of statutory damage awards.[113]

---

[113] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.7.6

<u>1.7 DAMAGES</u>

**1.7.7.  State of Mind and Corresponding Ranges of Statutory Damages**

In awarding statutory damages, for each infringed work you are to choose one of three categories, depending upon your determination of defendant's state of mind: (1) innocent infringement; (2) willful infringement; or (3) infringement that was neither innocent nor willful. As I will describe, each category has an associated range of statutory damages, and you must determine the award that is just under the circumstances within the range for the applicable category.

You have wide discretion in setting the amount of statutory damages, using the factors I will give you as guidance, as long as you do not go below or above the statutory range applicable to each work. For example, even if you find that the infringement was willful, you need not award the statutory maximum. Similarly, even if you find the infringement was innocent, you need not award the statutory minimum.

Innocent Infringement: An infringement is innocent if defendant was not aware, and had no reason to believe, that his acts constituted an infringement of copyright. It is defendant's burden to prove, by a preponderance of the evidence, that his infringement was innocent. If plaintiff provided proper notice of copyright prior to the infringement, such as by affixing a copyright notice on the work, the infringement cannot be innocent.

The level of sophistication of defendant in business is a factor you may consider in determining defendant's state of mind, including whether defendant's infringement was innocent.

If you find that the infringement of a work was innocent, you must award between $200 and $30,000 for each work so infringed.

Willful Infringement: An infringement is willful if defendant had actual knowledge that he was infringing plaintiff's copyright, or acted in reckless disregard of that right. It is plaintiff's burden to prove, by a preponderance of the evidence, that the infringement was willful.

You need not find that defendant acted maliciously in order to find willful infringement. Also, you may infer defendant's state of mind, including reckless disregard, from his conduct.

You are to consider all of the facts and circumstances, and in particular any notice that defendant had of the copyright.

If you find by a preponderance of the evidence that the infringement was willful, you must award between $750 and $150,000 for each work so infringed.

Infringement

Neither Innocent Nor Willful: If you find that the infringement was neither innocent nor willful, you must award between $750 and $30,000 for each work so infringed.[114]

_____
[114] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.7.7

<u>1.7 DAMAGES</u>

**1.7.8.  Factors to Consider in Assessing Statutory Damages**

There are many facts and considerations that could impact your determination of the amount of statutory damages in a given case. In this case, you are the ultimate judge of the facts and the appropriate award, within the statutory ranges. The following are some of the factors that may help guide your assessment of an appropriate award and you may consider any or all of them:

1. The revenues, if any, lost by plaintiff as a result of defendant's infringement;
2. The expenses saved or profits reaped by defendant in connection with the infringement;
3. Other benefits that infringement may have provided to defendant;
4. The value and/or nature of plaintiff's copyrights;
5. The duration and scope of infringement;
6. The need to deter defendant and others similarly situated from committing future copyright infringements;
7. The defendant's financial situation;
8. The number of works infringed and number of awards made (that is, the overall result);
9. The defendant's state of mind, including innocence or willfulness; and
10. In the case of willful infringement, the need to punish defendant, if you find punishment appropriate under the facts.[115]

---

[115] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.7.8

<u>1.9 DEFINITIONS</u>

### 1.9.3.  Computer Program[116]

A "computer program" is a set of statements or instructions to be used directly or indirectly in a computer to bring about a certain result.

### 1.9.4.  Copies[117]

"Copies" are material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. The term "copies" includes the material object, other than a phonorecord, in which the work is first fixed.

### 1.9.5.  Created[118]

A work is "created" when it is fixed in a copy or phonorecord for the first time. I will explain the term "fixed" to you in a moment. When a work is prepared over a period of time, the portion of it that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work.

### 1.9.13. Public Domain[119]

The "public domain" is the realm of works that belong to the community at large and are unprotected by copyright. Generally, a work is in the public domain if its term of copyright protection has expired, if it did not meet the requirements of copyright protection, if copyright was forfeited either deliberately or by failure to comply with requirements imposed by the Copyright Law, or if it was created by employees or officers of the United States government.

---

[116] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.9.3
[117] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.9.4
[118] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.9.5
[119] ABA Model Jury Instr. Copyright, Trademark, and Trade Dress Lit., 1.9.6

<u>NEW YORK STATE CLAIMS</u>

Unfair Competition
Misappropriation of Trade Secrets[120]

In order to state a claim for misappropriation of trade secrets, plaintiff must allege that it employed precautionary measures to preserve its allegedly exclusive knowledge of the manufacturing process at issue.

A trade secret has been defined as consisting of any formula, pattern, device or compilation of information that is used in one's business, and which gives him or her an opportunity to obtain an advantage over competitors who do not know or use it. The term "secret" has two related connotations: (1) substantial exclusivity of knowledge of the formula, process, device or compilation of information; and (2) employment of precautionary measures to preserve such exclusive knowledge by limiting legitimate access by others.

The factors to be considered in evaluating a trade secret claim include 1) the extent to which the information is known outside of the business; 2) the extent to which it is known by employees and others involved in the business; 3) the extent of measures taken by the business to guard the secrecy of the information; 4) the value of the information to the business and its competitors; 5) the amount of effort or money expended by the business in developing the information; 6) the ease or difficulty with which the information could be properly acquired or duplicated by others. However, neither mere knowledge of the intricacies of a business operation nor customer lists, where the customers are readily ascertainable from independent sources, are protectable trade secrets.

An unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the use of the same property.

Damages recoverable for misappropriation of trade secrets is the loss of profits resulting from the defendant's actual diverting of customers.

---

[120] *New York Pattern Jury Instructions* - Civil (2015)

<u>Breach of Contract[121]</u>

To prove a breach of contract, a plaintiff must demonstrate the following elements: (1) existence of a contract; (2) plaintiff's performance thereunder; (3) the defendant's breach thereof, and (4) resulting damages.

Plaintiff is suing Defendant Artur Zaytsev and Aleksandr Palatkevich for a breach of a non-disclosure, work-for-hire and non-compete agreements.   Defendants deny breaching any agreement.

Non-compete clauses in employment contracts are not favored and will be enforced only to the extent they are reasonable and necessary to protect valid business interests. In actions alleging a breach of an express anticompetitive covenant, courts should rigorously examine and specifically enforce only those covenants found to be reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee.

In the absence of a restrictive covenant not to compete, an employee is free to compete with his or her former employer unless trade secrets are involved or fraudulent methods (e.g. physically taking or copying employer's files) are employed.

The Court of Appeals has adopted a three-pronged test to determine the reasonableness of an anti-competitive covenant.  The restraint is reasonable only if it 1) is no greater than is required for the protection of the legitimate interest of the employer, 2) does not impose undue hardship on the employee, and 3) is not injurious to the public.. A violation of any prong renders the covenant invalid.

Importantly, a restrictive covenant cannot be enforced by a party who has breached the contract.

A former employer's client list is not entitled to trade secret protection where the information contained in the list is readily ascertainable from non-confidential sources outside of the former employer's business.

When an employee breaches the employment contract by refusing to perform, the employer is entitled to recover the difference between the contract wage and what the employer was required to pay to replace the employee.

---

[121] *New York Pattern Jury Instructions* - Civil (2015)

Breach of Fiduciary Duty and Breach of Duty of Loyalty[122]

Plaintiff claims that Defendant Artur Zaytsev breached his fiduciary duty and duty of loyalty to Stanacard.  Defendant Artur Zaytsev denies breaching any fiduciary duty and duty of loyalty.

In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct.

A fiduciary relationship is "necessarily fact-specific" and is grounded in a higher level of trust than normally present in the marketplace between those involved in arms-length business transactions.  Thus, many forms of conduct forbidden to those in a fiduciary relationship are permissible in an arm's length transaction.  A fiduciary relationship exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation.  A fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, Roni LLC v Arfa, supra.

Generally, where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship and the particular contractual expression establishing the parties' interdependency. However, fiduciary liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary, but results from the relation.
EBC I, Inc. v Goldman, Sachs & Co., supra; HF Management Services LLC v Pistone, supra.

A partner, agent, employee has a duty to his partner, principal, employer to act in good faith and in the partner's, principal's, employer's best interests during the period of the (partnership, agency, employment). A fiduciary owes it partner, principal, employer undivided and unqualified loyalty and may not act in any manner contrary to the interests of the partner, principal, or employer. A person acting in a fiduciary capacity is required to make truthful and complete disclosures to those to whom a fiduciary duty is owed and the fiduciary is forbidden to obtain an improper advantage at the other's expense.

This requires that, while employed, the employee must exert his best efforts on behalf of the company and not compete with it or profit at its expense, or place his private interests in conflict with its interests. An employee does not breach his fiduciary duties by telling clients that he is thinking of leaving and going to a new business.  An employee may make preparations to compete with his employer while still working for the employer.  Whether or not the employee has signed an agreement not to compete with the employer, the employee may not, while still employed, solicit clients of his employer to follow him, and may not actively divert the employer's business for his own personal benefit or the benefit of others.

---

[122] *New York Pattern Jury Instructions* - Civil (2015)

Plaintiff has the burden of proving damages.  The proponent of a claim for breach of fiduciary duty must, at a minimum, establish that the offending parties' actions were a substantial factor in causing an identifiable loss.

Conversion[123]

Conversion in New York entails a defendant, without authority, intentionally exercises control over the property of plaintiff and thereby interferes with plaintiff's right of possession, and therefore has committed a conversion and is liable for the value of the property.

---

[123] *New York Pattern Jury Instructions* - Civil (2015)

Unjust Enrichment[124]

As you have heard, the plaintiff claims that the defendants were unjustly enriched at plaintiff's expense. The defendants deny plaintiff's claims contentions.

Unjust enrichment occurs when the defendant has obtained money, property or a benefit from plaintiff under such circumstances that, in fairness and good conscience, the money, property or benefit should not be retained. In those circumstances, the law requires that defendant repay, return to or compensate the other person.

---

[124] *New York Pattern Jury Instructions* - Civil (2015)

DAMAGES GENERALLY

<u>INSTRUCTION 77-1 CONSIDER DAMAGES ONLY IF NECESSARY</u>[125]

If the plaintiff has proven by a preponderance of the credible evidence that defendant is liable on the plaintiff's claim, then you must determine the damages to which the plaintiff is entitled. However, you should not infer that the plaintiff is entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that the plaintiff is entitled to recovery.

---

[125] Matthew Bender, Modern Federal Jury Instructions, Form 485-77-1 : Eulo v. Deval Aerodynamics, Inc., 47 F.R.D. 35 (E.D. Pa. 1969), modified on other grounds, 430 F.2d 325 (3d Cir. 1970); Fifth Circuit Pattern Civil Jury Instruction 15.1; Krieger v. Bausch, 377 F.2d 398 (10th Cir. 1967).

INSTRUCTION 77-3 COMPENSATORY DAMAGES[126]

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the defendant's violation of the plaintiff's rights. If you find that the defendant is liable on the claims, as I have explained them, then you must award the plaintiff sufficient damages to compensate him or her for any injury proximately caused by the defendant's conduct.

These are known as "compensatory damages." Compensatory damages seek to make the plaintiff whole—that is, to compensate him or her for the damage suffered. (If applicable: Damages for a breach of contract should place the wronged party in as good a position as that party would have been if the breaching party had fully performed its obligations under the contract.) (If applicable: Furthermore, compensatory damages are not limited merely to expenses that plaintiff may have borne. A prevailing plaintiff is entitled to compensatory damages for the physical injury, pain and suffering, mental anguish, shock and discomfort that he or she has suffered because of [alleged infringer]'s conduct.)

I remind you that you may award compensatory damages only for injuries that a plaintiff proves were proximately caused by [alleged infringer]'s allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative injuries, but only for those injuries that a plaintiff has actually suffered or which he or she is reasonably likely to suffer in the near future.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his or her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

---

[126] Matthew Bender, Modern Federal Jury Instructions, Form 485-77-1 : Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S. Ct. 248, 75 L. Ed. 544 (1931).
Kinty v. United Mine Workers of America, 544 F.2d 706 (4th Cir. 1976); Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962); Fifth Circuit Pattern Civil Jury Instruction 15.2l  U.C. Castings Co. v. Knight, 754 F.2d 1363 (7th Cir. 1985); Luria Brothers & Co. v. Pielet Brothers Scrap Iron Metal, Inc., 600 F.2d 103 (7th Cir. 1979); Bluebonnet Savings Bank v. United States, 339 F.3d 1341 (Fed. Cir. 2003)).

<u>INSTRUCTION 77-7 MITIGATION OF DAMAGES</u>[127]

You are instructed that any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages. The law imposes on an injured person the duty to take advantage of reasonable opportunities he may have to prevent the aggravation of his injuries, so as to reduce or minimize the loss or damage.

If you find the defendant is liable and that the plaintiff has suffered damages, the plaintiff may not recover for any item of damage he could have avoided through such reasonable effort. If the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny recovery for those damages which he would have avoided had he taken advantage of the opportunity.

Bear in mind that the question whether the plaintiff acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured plaintiff to exert himself unreasonably or incur unreasonable expense in an effort to mitigate, and it is defendant's burden of proving that the damages reasonably could have been avoided. In deciding whether to reduce plaintiff's damages due to some failure to mitigate, therefore, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendant has satisfied his burden of proving that the plaintiff's conduct was not reasonable.

---

[127] Matthew Bender, Modern Federal Jury Instructions, Form 485-77-7 : Third Circuit Model Civil Jury Instructions 4.8.1, 5.4.1, 6.4.1, 9.4.1; Southport Transit Co. v. Avondale Marine Ways, Inc., 234 F.2d 947 (5th Cir. 1956); Fifth Circuit Pattern Civil Jury Instruction 15.15; Holladay v. Chicago, Burlington & Quincy Railroad Co., 255 F. Supp. 879 (S.D. Iowa 1966); Ninth Circuit Model Civil Jury Instruction 7.3; Hildago Properties, Inc. v. Wachovia Mortgage Co., 617 F.2d 196 (10th Cir. 1980); Trejo v. Denver & Rio Grande Western Railroad Co., 568 F.2d 181 (10th Cir. 1977); Eleventh Circuit Pattern Civil Jury Instructions, Damage Instruction 1.1.

<u>INSTRUCTION 77-6 NOMINAL DAMAGES</u>[128]

If you find, after considering all the evidence presented, that the defendant violated the plaintiff's rights or breached a duty owed to the plaintiff, but that the plaintiff suffered no injury as a result of this violation or breach, you may award the plaintiff "nominal damages." "Nominal damages" are awarded as recognition that the plaintiff's rights have been violated. You would award nominal damages if you conclude that the only injury that a plaintiff suffered was the deprivation of his constitutional rights, without any resulting physical, emotional or financial damage.

You may also award nominal damages if, upon finding that some injury resulted from a given unlawful act, you find that you are unable to compute monetary damages except by engaging in pure speculation and guessing.

You may not award both nominal and compensatory damages to a plaintiff; either he was measurably injured, in which case you must award compensatory damages, or else he was not, in which case you may award nominal damages.

Nominal damages may not be awarded for more than a token sum.

---

[128] Matthew Bender, Modern Federal Jury Instructions, Form 485-77-6 : Magnett v. Pelletier, 488 F.2d 33 (1st Cir. 1973); Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret, 677 F.2d 254 (2d Cir. 1982); Redding v. Fairman, 717 F.2d 1105 (7th Cir. 1983).

<u>INSTRUCTION 77-5 PUNITIVE DAMAGES</u>[129]

        If you should find that the defendant is liable for the plaintiff's injuries, then you have the discretion to award, in addition to compensatory damages, punitive damages. You may award punitive damages if the plaintiff proves by a preponderance of the evidence that the defendant's conduct was malicious and reckless, not merely unreasonable. An act is malicious and reckless if it is done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the safety and rights of others. The purpose of punitive damages is to punish [alleged infringer] for shocking conduct and to set an example in order to deter him or her and others from committing similar acts in the future.

        The awarding of punitive damages is within your discretion—you are not required to award them. Punitive damages are appropriate only for especially shocking and offensive misconduct. If you decide to award punitive damages, you must use sound reason in setting the amount—it must not reflect bias, prejudice, or sympathy toward any party. But the amount may be as large as you believe necessary to fulfill the purpose of punitive damages. In this regard, you may consider the financial resources of the defendant in fixing the amount of punitive damages (and you may impose punitive damages against one or more of the defendants, and not others, or against more than one defendant in different amounts).

---

[129] Matthew Bender, Modern Federal Jury Instructions, Form 485-77-5 : Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999); Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 111 S. Ct. 1032, 113 L. Ed. 2d 1 (1991); Romano v. U-Haul International, 233 F.3d 655 (1st Cir. 2000); Fifth Circuit Pattern Civil Jury Instruction 15.13; Hilao v. Estate of Marcos, 103 F.3d 767 (9th Cir. 1997); Ninth Circuit Model Civil Jury Instruction 7.5).

<u>INSTRUCTION 77-4 CALCULATION OF PAST AND FUTURE DAMAGES</u>[130]

[As applicable:]

    a.   damages accrued:

    A prevailing plaintiff is entitled to recover an amount that will fairly and adequately compensate him for any damages sustained to date.

    b.   calculation of future damages:

If you find that plaintiff is reasonably certain to suffer damages in the future from his injuries then you should award plaintiff such amount as you believe would reasonably compensate plaintiff for such future damages. (In calculating future damages, you should consider the standard table of mortality as compiled by the United States Bureau of the Census.)

    c.   reduction of future damages to present value:

    If you should find that the plaintiff is entitled to a verdict which is based in part on future damages, including future earnings or future pain and suffering, then it becomes the duty of the jury to ascertain the present worth in dollars of such future damages, since the award of future damages necessarily requires that payment be made now for a loss that will actually not be sustained until some future date.
    Under these circumstances, the result is that the plaintiff will, in effect, be reimbursed in advance of the loss and will have the use of money which he would not have received until a future date but for the verdict.

    In order to make a reasonable adjustment for the present use, interest-free, of money representing a lump sum payment of anticipated future loss, the law requires that the jury discount or reduce to its present worth the amount of the anticipated future loss by taking, one, the interest rate or return which the plaintiff would reasonably expect to receive on the investment of a lump sum payment together with two, the period of time over which the future loss whatever that amount would reasonably be certain to earn or return if invested at such a rate of interest over such a future period of time.

    Then you should include in your verdict an award for only the present worth, the reduced amount of the total anticipated future loss.

    It is not as difficult as it may seem. For example, applying your common sense once again,

---

[130] Matthew Bender, Modern Federal Jury Instructions, Form 485-77-4, : Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S. Ct. 2541, 76 L. Ed. 2d 768 (1983); Norfolk & Western Ry. Co. v. Liepelt, 444 U.S. 490, 100 S. Ct. 755, 62 L. Ed. 2d 689 (1980); Woodling v. Garrett Corp., 813 F.2d 543 (2d Cir. 1987); McCrann v. United States Lines, Inc., 803 F.2d 771 (2d Cir. 1986); Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir. 1984); Fifth Circuit Pattern Civil Instruction 15.3; O'Shea v. Riverway Towing Co., 677 F.2d 1194 (7th Cir. 1982); Trevino v. United States, 804 F.2d 1512 (9th Cir. 1986); Ninth Circuit Model Civil Jury Instruction 7.4; Eleventh Circuit Pattern Civil Jury Instructions, Damage Instruction 5.3).

let us say that a person offered you $100 a year for ten successive years, and that amounts to $1,000, 100 times 10. Now, ask yourselves, what would be the reasonable amount for you to demand and for you to expect him to pay you today that represents the present value of that commitment on his part to pay you $100 a year for ten consecutive years. To compute that figure you would want to know what the interest rate was on the amount that you would be receiving, and how many years you would be collecting that interest. You would make a determination thereby of the present value of the future loss; and this instruction relates to those items of damages that relate to future loss, not to those items which relate to loss which has already occurred.

Regarding calculating the present value of future wages, you may apply one of two alternative methods. The first method expressly addresses the probable effect of inflation on both future wages and interest rates. Applying this method, you should consider the effect that both inflation and non-related inflation factors, such as increases in productivity and seniority, would have on the plaintiff's future income. Bear in mind that the plaintiff has the burden of proving the likelihood of increased wages stemming from increased productivity. Once their future wages are determined, they should then be discounted by a rate of interest not less than that being currently paid by banks on savings deposits.

The second method, which you may prefer due to its ease of application, determines present value by considering a world in which neither wages nor interest rates would be affected by inflation. Applying this alternative method, you should first determine the plaintiff's future income by considering only those increases in wages which the plaintiff has convinced you that he would have received in the absence of inflation; that is, raises due to increased skill, seniority, and similar factors. Such wages should then be discounted by a rate of interest that would prevail in a world without inflation. Although experts disagree on the subject, the court feels it wise to advise you that historical real interest rates have hovered between 1 and 3 percent. In determining the particular interest rate to apply, however, you are to consider all evidence which suggests that the discount rate will be other than this 1 to 3 percent figure.

d.   treatment of taxes:

If you arrive at a verdict in favor of the plaintiff, you may not add any sum of money to the verdict for federal or state income taxes, as the sum recovered by plaintiff is not subject to tax.

119

## INSTRUCTION 15.2 COMPENSATORY DAMAGES[131]

If you find that Defendant        [name] is liable to Plaintiff        [name], then you must determine an amount that is fair compensation for all of Plaintiff        [name]'s damages. These damages are called compensatory damages. The purpose of compensatory damages is to make Plaintiff        [name] whole—that is, to compensate Plaintiff        [name] for the damage that [he/she/it] has suffered. Compensatory damages are not limited to expenses that Plaintiff [name] may have incurred because of [his/her] injury. If Plaintiff        [name] wins,        [he/she] is entitled to compensatory damages for the physical injury, pain and suffering, and mental anguish that        [he/she] has suffered because of Defendant        [name]'s wrongful conduct.

You may award compensatory damages only for injuries that Plaintiff        [name] proves were proximately caused by Defendant        [name]'s allegedly wrongful conduct. The damages that you award must be fair compensation for all of Plaintiff        [name]'s damages, no more and no less. [Damages are not allowed as a punishment and cannot be imposed or increased to penalize Defendant        [name].] You should not award compensatory damages for speculative injuries, but only for those injuries that Plaintiff        [name] has actually suffered or that Plaintiff [name] is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that Plaintiff [name] prove the amount of        [his/her] losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

*(Insert the damage elements that may be compensable under federal or state law. This chapter contains instructions explaining some common elements.)*

---

[131] Matthew Bender, Modern Federal Jury Instructions, Form 485A-5c-15.2

## INSTRUCTION 15.5 MITIGATION OF DAMAGES[132]

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate          [his/her] damages, that is, to avoid or to minimize those damages.

If you find Defendant          [name] is liable and Plaintiff          [name] has suffered damages, Plaintiff          [name] may not recover for any item of damage that          [he/she] could have avoided through reasonable effort. If you find that Defendant          [name] has proved by a preponderance of the evidence that Plaintiff          [name] unreasonably failed to take advantage of an opportunity to lessen          [his/her] damages, you should deny          [him/her] recovery for those damages that          [he/she] would have avoided had          [he/she] taken advantage of the opportunity.

You are the sole judge of whether Plaintiff          [name] acted reasonably in avoiding or minimizing          [his/her] damages. An injured Plaintiff          [name] may not sit idly by when presented with an opportunity to reduce          [his/her] damages. However,          [he/she] is not required to make unreasonable efforts or to incur unreasonable expenses in mitigating damages. Defendant          [name] has the burden of proving the damages that Plaintiff          [name] could have mitigated. In deciding whether to reduce Plaintiff          [name]'s damages because of [his/her] failure to mitigate, you must weigh all the evidence in light of the circumstances of the case, using sound discretion in deciding whether Defendant [name] has satisfied          [his/her] burden of proving that Plaintiff          [name]'s conduct was not reasonable.

---

[132] Matthew Bender, Modern Federal Jury Instructions, Form 485A-5c-15.5

INSTRUCTION 15.6 NOMINAL DAMAGES[133]

Nominal damages are an inconsequential or trifling sum awarded to a plaintiff when a technical violation of [his/her] rights has occurred but the plaintiff has suffered no actual loss or injury.

If you find from a preponderance of the evidence that Plaintiff          [name] sustained a technical violation of [specify or describe applicable right] but that Plaintiff          [name] suffered no actual loss as a result of this violation, then you may award Plaintiff          [name] nominal damages.

---

[133] Matthew Bender, Modern Federal Jury Instructions, Form 485A-5c-15.6

<u>INSTRUCTION 15.7 PUNITIVE DAMAGES</u>[134]

If you find that Defendant            [name] is liable for Plaintiff            [name]'s injuries, you must award Plaintiff            [name] the compensatory damages that [he/she] has proved. You may, [in addition], award punitive damages if you find that Defendant            [name] acted with malice or with reckless indifference to the rights of others. One acts with malice when one purposefully or knowingly violates another's rights or safety. One acts with reckless indifference to the rights of others when one's conduct, under the circumstances, manifests a complete lack of concern for the rights or safety of another. Plaintiff            [name] has the burden of proving that punitive damages should be awarded [insert appropriate burden of proof here].

The purpose of punitive damages is to punish and deter, not to compensate. Punitive damages serve to punish [alleged infringer] for malicious or reckless conduct and, by doing so, to deter others from engaging in similar conduct in the future. You are not required to award punitive damages. If you do decide to award punitive damages, you must use sound reason in setting the amount. Your award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed that Plaintiff            [name] has been made whole by compensatory damages, so punitive damages should be awarded only if Defendant            [name]'s misconduct is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

If you decide to award punitive damages, the following factors should guide you in fixing the proper amount:

1. the reprehensibility of Defendant            [name]'s conduct, including but not limited to whether there was deceit, cover-up, insult, intended or reckless injury, and whether Defendant            [name]'s conduct was motivated by a desire to augment profit;
2. the ratio between the punitive damages you are considering awarding and the amount of harm that was suffered by the victim or with which the victim was threatened;
3. the possible criminal and civil sanctions for comparable conduct.

You may consider the financial resources of Defendant            [name] in fixing the amount of punitive damages.

**(If there is more than one defendant against whom punitive damages are appropriately sought):**

You may impose punitive damages against one or more of Defendants [names] and not others. You may also award different amounts against Defendants            [names].

---

[134] Matthew Bender, Modern Federal Jury Instructions, Form 485A-5c-15.7

## DELAWARE STATE CLAIM
### Delaware Uniform Trade Secrets Act Claim

**Jury Instructions No. 1: Delaware Uniform Trade Secrets Act (DUTSA)**

### Introduction: Misappropriation of Trade Secrets

Plaintiff claims that it is the owner/licensee of [add general description of alleged trade secrets "computer software program"].  Plaintiff claims that the computer software program is a trade secret and that Defendants misappropriated it [and engaged in unfair competition].

Defendants deny this claim and also claims that Stanacard did not establish that the information at issue constituted trade secrets or was misappropriated by Defendants.[135]

---

[135] 6 Del. C. § 2001.

**Jury Instructions No. 2: Delaware Uniform Trade Secrets Act (DUTSA)**

**Misappropriation of Trade Secrets—Essential Factual Elements**

Stanacard claims that the Rubard Parties have misappropriated a trade secret.   Under Delaware law, the Delaware Uniform Trade Secrets Act, trade secrets are a protectable interest.

To succeed on this claim under the DUTSA, Stanacard has the burden to prove all of the following by a preponderance of evidence:

1. Stanacard owned/was a licensee of the following:
    i. [describe each item claimed to be a trade secret that is subject to the misappropriation claim [computer software program]];
2. the computer software program was a trade secret at the time of the misappropriation, i.e., the statutory elements—there is a commercial utility arising from secrecy and reasonable steps to maintain secrecy--have been shown;
3. Stanacard communicated the trade secret to the Rubard Parties;
4. that such communication was made pursuant to an express or implied understanding that the secrecy of the matter would be respected; and
5. that the trade secret has been used or disclosed improperly to Stanacard's detriment.[136]

Preponderance of the evidence

It is important to remember that the burden to be met by Stanacard on its DUTSA claim is one of a preponderance of the evidence.  Proof by a preponderance of the evidence means proof that something is more likely than not.  In other words, it means that certain evidence presented and admitted during the course of trial, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not.[137]

---

[136] See Savor, Inc. v. FMR Corp., Case No. 00C-10-249-JRS, 2004 WL 1965869, *5 (Del. Super. Ct. 2004); Dionisi v. DeCampli, 1995 Del. Ch. LEXIS 88, *30 (Del. Ch. June 28, 1995).  See also Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC, Case No. 3718, 2010 WL 338219 (Del. Ch. Jan. 29, 2010) ("Cherrydale cannot be held liable for misappropriation of Southern's Order Status Report because Great American failed to show Cherrydale is vicariously liable for Southern's actions in that regard")Dionisi v. DeCampli, Case No. 9425,1995 WL 398536, *11 (Del. Ch. June 28, 1995)).

[137] See Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC, Case No. 3718, 2010 WL 338219, n. 196 (Del. Ch. Jan. 29, 2010) to Del. P.J.I. Civ. § 4.1 (2000) ("Proof by a preponderance of the evidence means proof that something is more likely than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not."); Del. Express Shuttle, Inc. v. Older, Case No. 19596, 2002 WL 31458243,*17 (Del. Ch. Oct. 23, 2002) ("It is important to remember that the burden to be met by the Plaintiff is one of a preponderance of the evidence.")).

**Jury Instruction No. 3: Delaware Uniform Trade Secrets Act (DUTSA)**

## "Trade Secret" Defined

The Delaware Uniform Trade Secrets Act (DUTSA) defines a trade secret as a formula, pattern, compilation, program, device, method, technique or process, that:

1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. [138]

Stanacard as the party asserting the existence of a trade secret must describe its "trade secret" with a reasonable degree of precision and specificity such that a reasonable jury could find that Stanacard established each statutory element of a trade secret. [139]

---

[138] 6 Del. C. § 2001(4).  The Delaware Uniform Trade Secrets Act defines a trade secret as a formula, pattern, compilation, program, device, method, technique or process, that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

[139] See Savor, Inc. v. FMR Corp., 2004 WL 1965869, *22 (Del. Super. Ct. 2004) (the party asserting a trade secret must describe its "trade secret" with "a 'reasonable degree of precision and specificity . . . such that a reasonable jury could find that plaintiff established each statutory element of a trade secret.'" (quoting Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc, 318 F. Supp. 2d 205, 2004 WL 1124758, at *4 (D. Del.)("the plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."))

**Jury Instruction No. 4: Delaware Uniform Trade Secrets Act (DUTSA)**

### Reasonable Efforts to Protect Secrecy

To establish that the computer software program is a trade secret, Stanacard must prove that it made reasonable efforts under the circumstances to keep it secret.

"Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Stanacard, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Stanacard claims to be a trade secret.

In determining whether or not Stanacard made reasonable efforts to keep the computer software program secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

    a.  Whether documents or computer files containing the computer software program were marked with confidentiality warnings;

    b.  Whether Stanacard instructed its employees to treat the computer software program as confidential;

    c.  Whether Stanacard restricted access to the computer software program to persons who had a business reason to know the information;

    d.  Whether Stanacard kept the computer software program in a restricted or secured area;

    e.  Whether Stanacard required employees or others with access to the computer software program to sign confidentiality or nondisclosure agreements;

    f.  Whether Stanacard took any action to protect the specific computer software program, or whether it relied on general measures taken to protect its business information or assets;

    g.  The extent to which any general measures taken by Stanacard would prevent the unauthorized disclosure of the computer software program;

    h.  Whether there were other reasonable measures available to Stanacard that it did not take.[140]

---

[140] <u>Wayman Fire Prot. v. Premium Fire & Sec., LLC</u>, Case No. , 2014 Del. Ch. LEXIS 33, *52 and n. 116 (Del. Ch. Mar. 5, 2014) ("In prior trade secrets cases, this Court has recognized confidentiality provisions in employment contracts, employee handbooks, and letters sent to employees following their termination as evidence of reasonable efforts to maintain the confidentiality of trade secret information. This Court also has found that reasonable efforts were taken to preserve confidentiality when a company had implemented specific policies to prevent disclosure of information to outsiders or the company was in an industry where custom dictated that certain information be kept confidential. . . [Plaintiff] has not presented evidence that it conveyed to those to whom it gave passwords to access Salesforce that the Salesforce information was highly confidential or secret")("At the end of both Salesforce reports, in small print, it says "Confidential information — Do Not Distribute." JX 101; JX 102. There is no evidence that Fox or any other Wayman Salesforce user was cognizant of that easy-to-overlook language, or that Wayman ever  [56] brought that concept to its employees' attention."); <u>Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC</u>, Case No. 3718-VCP, 2010 WL 338219, *19 (Del. Ch. Jan. 29, 2010) ("KB took steps to protect the confidentiality of its customer lists by, among other things, including provisions in its Employment Contract, its Handbook, and letters it sent its employees following termination that notified sales reps and other KB employees of the sensitive and proprietary nature of that information and prohibited them from disclosing such information while employed with and after leaving KB."); <u>Miles, Inc. v. Cookson Am., Inc.</u>, Case No. 12,310, 1994 WL 676761, *12 (Del. Ch. 1994) (finding a process subject to reasonable efforts to maintain secrecy where access to the company plant was restricted, and

**Jury Instruction No. 5: Delaware Uniform Trade Secrets Act (DUTSA)**

### Misappropriation by Acquisition

Defendants misappropriated Plaintiff's trade secrets by acquisition if Defendants acquired the trade secrets and knew or had reason to know that a party used improper means to acquire them.[141]

However, the law is clear that a comparison of published components of two customer loyalty programs cannot without more, give rise to a reasonable inference of misappropriation.[142]

---

employees signed confidentiality agreements and were not permitted to remove documents from the plant)

[141] 6 Del. C. § 2001(2). "Misappropriation" means: a. the Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or b. Disclosure or use of a trade secret of another without express or implied consent by a person who: 1. Used improper means to acquire knowledge of the trade secret; or 2. At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade was: A. Derived from or through a person who had utilized improper means to acquire it; B. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or C. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or 3. Before a material change of the person's position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

[142] Nucar Consulting, Inc. v. Doyle, Case No. A. 19756-NC, 2005 WL 820706, *7, 2005 Del. Ch. LEXIS 43, *22-23 (Del. Ch. Apr. 5, 2005) ("The law is clear that a comparison of published components of two customer loyalty programs "cannot, without more, give rise to a reasonable inference of misappropriation." Thus, even assuming aguendo that the technical processes of NuCar's program warrant trade secret protection, the Court would have no basis upon which to determine whether Defendants misappropriated those trade secrets.") (quoting Savor, 2004 Del. Super. LEXIS 276, 2004 WL 1965869, at *10).

**Jury Instruction No. 6: Delaware Uniform Trade Secrets Act (DUTSA)**

**Misappropriation by Disclosure**

The Rubard Parties misappropriated Stanacard's trade secrets by disclosure if they:

1.  disclosed them without Stanacard's consent; and
2.  did any of the following:

    a.  acquired knowledge of the trade secrets by improper means; or
    b.  at the time of disclosure, knew or had reason to know that their knowledge of Stanacard's' trade secrets came from or through Palatkevich, and that Palatkevich had previously acquired the trade secrets by improper means; or
    c.  at the time of disclosure, knew or had reason to know that their knowledge of Stanacard's trade secrets was acquired giving rise to duty to maintain secrecy, which created a duty to keep the Copyrighted Works secret; or
    d.  at the time of disclosure, knew or had reason to know that his knowledge of Stanacard's trade secrets came from or through Palatkevich, and that Palatkevich had a duty to Stanacard to keep the information secret; or
    e.  before a material change of their position, knew or had reason to know that they were a trade secret and that knowledge of them had been acquired by accident or mistake.[143]

---

[143] 6 Del. C. § 2001(2)("Misappropriation" defined)

**<u>Jury Instruction No. 7: Delaware Uniform Trade Secrets Act (DUTSA)</u>**

**Misappropriation by Use**

The Rubard Parties misappropriated Stanacard's trade secrets by use if they:

1.  used them without Stanacard's consent; and
2.  did any of the following:

    a.  acquired knowledge of the trade secrets by improper means; or

    b.  at the time of use, knew or had reason to know that their knowledge of Stanacard's trade secrets came from or through Palatkevich, and that Palatkevich had previously acquired the trade secrets by improper means; or

    c.  at the time of use, knew or had reason to know that their knowledge of Stanacard's trade secrets was acquired under circumstances creating a legal obligation to limit use of the information; or

    d.  at the time of use, knew or had reason to know that their knowledge of Stanacard's trade secrets came from or through Palatkevich, and that Palatkevich had a duty to Stanacard to limit use of the information; or

    e.  before a material change of their position, knew or had reason to know that the computer software program was a trade secret and that knowledge of it had been acquired by accident or mistake.[144]

However, it is not enough that any of the Rubard Parties to have coincidental similarities with Stanacard's product.  Rather the evidence must show that Palatkevich did not develop the trade secret on his own.[145]

---

[144] 6 Del. C. § 2001(2)("Misappropriation" defined)
[145] <u>Savor, Inc. v. FMR Corp.</u>, Case No. 00C-10-249-JRS, 2004 WL 1965869, *10 (Del. Super. Ct. July 15, 2004)

**Jury Instruction No. 8: Delaware Uniform Trade Secrets Act (DUTSA)**

## Improper Means of Acquiring A Trade Secret

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft, bribery, misrepresentation, breach or inducing a breach of a duty to maintain secrecy or espionage through electronic or other means.[146]

However, it is not improper to acquire a trade secret or knowledge of the trade secret by any of the following:

1. Independent efforts to invent or discover the information;
2. Observing the information in public use or on public display; or
3. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.[147]

Further, under Delaware law, an employee may use and take general knowledge or information he or she has developed during their period of employment or service and in the absence of a covenant not to compete an employee who achieves technical expertise or general knowledge while in the employ of another may thereafter use that knowledge in competition with his former employer, so long as he does not use or disclose protected trade secrets in the process.[148]

---

[146] 6 Del. C. § 2001(1). Improper means includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

[147] Del. Express Shuttle v. Older, 2002 Del. Ch. LEXIS 124, *71 (Del. Ch. Oct. 23, 2002); (Miles, Inc. v. Cookson Am., Inc., 1994 Del. Ch. LEXIS 221, 1994 WL 676761 at *10 (Del. Ch. Nov. 15, 1994) ("An alleged trade secret derives actual or potential independent economic value if a competitor cannot produce a comparable product without a similar expenditure of time and money." . . ."the Delaware Express Corporate Customer List does not qualify as a protected trade secret under the Act because it is readily reproducible from sources already in the public domain")

[148] Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc, 318 F. Supp. 2d 205 (D. Del. May 13, 2004)("the plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."); Rypac Packaging Mach., Inc. v. Coakley, Case No. 16069, 2000 Del. Ch. LEXIS 64, *37 (Del. Ch. May 1, 2000) ("Delaware case law provides that in the absence of a covenant not to compete: An employee who achieves technical expertise or general knowledge while in the employ of another may thereafter use that knowledge in competition with his former employer, so long as he does not use or disclose protected trade secrets in the process.") Wilmington Trust Co. v. Consistent Asset Management Co. Inc., Case No. 8867 1987 Del. Ch. LEXIS 409, *14, (Del. Ch. March 25, 1987) ("An employee who achieves technical expertise or general knowledge while in the employ of another may thereafter use that knowledge in competition with his former employer, so long as he does not use or disclose protected trade secrets in the process. . . The rule is no different when an employee begins his employment innocent of any knowledge in a field and acquires all of his expertise while on his employer's payroll. One leading treatise states the view that: Although an employee may have begun as an unskilled worker, the knowledge and skills he gained, through his apprenticeship and training in another's business are unquestionably his own."

**Jury Instruction No. 9: Delaware Uniform Trade Secrets Act (DUTSA)**

**Stanacard Must Prove That the Rubard Parties'
Misappropriation of Trade Secrets Proximately Caused Damages**

If Stanacard proves that the Rubard Parties misappropriated its trade secret, then Stanacard is entitled to recover damages if the actual loss or unjust enrichment claimed by Stanacard is caused by the misappropriation.[149]   Thereby, before Stanacard may recover damages it must prove by a preponderance of the evidence that its damages --lost profits or unjust enrichment of the Rubard Parties -- would not have been incurred but for the Rubard Parties' misappropriation of its trade secret.[150]

In assessing whether the misappropriation caused the alleged damages, the analysis involves two steps:

1. First, you must determine whether Stanacard has proven that an injury or damage occurred; and
2. Second, you must determine whether Stanacard has adequately proven the amount of its damages.

---

[149] 6 Del. C. § 2003(a).("(a) Except to the extent that a material and prejudicial change of position prior to acquiring knowledge or reason to know of misappropriation renders a monetary recovery inequitable, a complainant is entitled to recover damages for misappropriation. Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret; (b) If wilful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a) of this section.

[150] Total Care Physicians, P.A. v. O'Hara, Case No. , Case No. A. 99C-11-201JRS, 2003 WL 21733023, *2-3 (Del. Super. Ct. July 10, 2003) ("'Delaware recognizes the traditional 'but for' definition of proximate causation.' 'Our time-honored definition of proximate cause … is that direct cause without which [an injury] would not have occurred.' This definition directs the Court's analysis here. Before TCP may recover damages for misappropriation of trade secrets, it must prove by a preponderance of the evidence that its damages caused would not have been incurred but for Dr. O'Hara's solicitation of patients.  And, to the extent TCP intends to seek damages for profits lost as a result of the departure of the wrongfully solicited patients, or profits of Dr. O'Hara gained by the arrival of such patients at his new medical practice, TCP must prove that such losses were proximately caused by the misappropriation, i.e., by the wrongful solicitation.")(quoting Duphily v. Delaware Elec. Coop., Inc., 662 A.2d 821, 828 (Del.1995) and Chudnofsky v. Edwards, 208 A.2d 516, 518 (Del.1965)).

## Jury Instruction No. 10: Delaware Uniform Trade Secrets Act (DUTSA)

### Remedies for Misappropriation of Trade Secrets

In a DUTSA misappropriation of trade secrets case, damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

The starting point however is actual loss (lost profits) and this number must be proven before Stanacard may proceed further. To the extent the computation of this figure does not include any enrichment on the part of the Rubard Parties as result of the misappropriation, that figure may can also be calculated and included in the damages presentation.[151]

Delaware law does not permit recovery of damages which are merely speculative or conjectural.[152]

---

[151] 6 Del. C. § 2003; Total Care Physicians, P.A. v. O'Hara, Case No. , Case No. A. 99C-11-201JRS, 2003 WL 21733023, *2-3 (Del. Super. Ct. July 10, 2003)

[152] Dionisi v. DeCampli, 1995 Del. Ch. LEXIS 88, 1995 WL 398536 (acknowledging that public policy may require the wrongdoer to "bear the risk of uncertainty of damages where they cannot be proved with mathematical certainty," the court ultimately declined to lower the threshold of proof with respect causation where defendant presented "ample evidence suggest[ing] credible reasons [other than the misappropriation]" for plaintiff's damages)

**Jury Instruction No. 12: Delaware Uniform Trade Secrets Act (DUTSA)**

**Punitive Damages for Willful and Malicious Misappropriation**

If you decide that the Rubard Parties' misappropriation caused Stanacard harm, you must decide whether that conduct justifies an award of punitive damages. The DUTSA provides that if wilful and malicious misappropriation exists, punitive damages may be awarded in amount not exceeding twice any award of actual damages. [153] Therefore, in order to recover punitive damages, you must determine whether any Rubard Parties individually acted willfully and maliciously meriting punitive damages.

"Willfulness" means a Rubard Party acted with an awareness, either actual or constructive, of their own conduct and a realization of its probable consequences.

"Malice" means that a Rubard Party acted with an intent to cause injury, ill-will or with hatred.

Both willfulness and malice must be present for an award of punitive damages. [154]  For example, if you find that any of the Rubard Defendants willfully misappropriated Stanacard's trade secrets but did so because he believed it would help him in his new job or endeavor, not because he harbored any ill-will or hatred towards Stanacard or intended to harm Stanacard, then punitive damages do not apply.[155]

---

[153] 6 Del. C. § 2003(b). ("If wilful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a) of this section.") [KATE: the DUTSA statute provides that "the court" may award exemplary damages, not sure if this means that Jury only decides if willful and malicious and Court decides if exemplary should be awarded? See also Uniform Trade Secrets Act § 3, 2005 com. "This provision follows federal patent law in leaving discretionary trebling to the judge even though there may be a jury, compare 35 U.S.C. Section 284 (1976)") ("In either event the court may increase the damages up to three times") Uniform Trade Secrets Act available here: http://www.uniformlaws.org/shared/docs/trade%20secrets/utsa_final_85.pdf]

[154] Beard Research, Inc. v. Kates, 8 A.3d 573, 600 (Del. Ch. 2010) aff'd sub nom. ASDI, Inc. v. Beard Research, Inc., 11 A.3d 749 (Del. 2010) (Finding that plaintiff did not specify which evidence they believed showed that Defendants' misappropriation was malicious. And while there may be some evidence of Defendants' malice towards Plaintiffs, there is no evidence connecting this malice to Defendants' misappropriation of the CB Trade Secrets"); NuCar Consulting, Inc. v. Doyle, 2005 Del. Ch. LEXIS 43, 2005 WL 820706, at *14 (Del. Ch. Apr. 5, 2005)

[155] Wayman Fire Prot. v. Premium Fire & Sec., LLC, Case No. 7866, 2014 WL 897223 (Del Ch. Ct. March 5, 2014) (Denying plaintiff's Delaware Misuse of Computer System Information Act, 11 Del. C. § 935 claim for exemplary damages, and analogizing to Delaware's misappropriation claim, the Court held that "[a]s to copying Wayman's files, White, like several other current or former Wayman employees, copied files and backed up his computers as a matter of habit. Furthermore, White brought the Wayman files he had assembled over the course of his career there to Premium Fire because he believed it would help him in his new job, not because he harbored any ill-will or hatred towards Wayman or intended to harm Wayman")

<u>CLOSING INSTRUCTIONS – AT CLOSE OF TRIAL</u>

<u>INSTRUCTION 71-1 JUROR ATTENTIVENESS</u>[156]

      Ladies and gentlemen, before you begin your deliberations, I now am going to instruct you on the law. You must pay close attention and I will be as clear as possible.

      It has been obvious to me and counsel that until now you have faithfully discharged your duty to listen carefully and observe each witness who testified. Your interest never flagged, and you have followed the testimony with close attention.

      I ask you to give me that same careful attention as I instruct you on the law.

---

[156] Matthew Bender, Modern Federal Jury Instructions, Form 71-1

INSTRUCTION 71-2 ROLE OF THE COURT[157]

You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

---

[157] Matthew Bender, Modern Federal Jury Instructions, Form 71-2 Patapsco Insurance Co. v. Southgate, 30 U.S. 604, 621, 8 L. Ed. 243 (1831); Franks v. United States Lines Co., 324 F.2d 126 (2d Cir. 1963); United States v. 564.54 Acres of Land, 576 F.2d 983 (3d Cir. 1978), rev'd on other grounds, 441 U.S. 506 (1979); Shelak v. White Motor Co., 636 F.2d 1069 (5th Cir. 1981); Martin v. Travelers Indemnity Co., 450 F.2d 542 (5th Cir. 1971); Nolan v. Greene, 383 F.2d 814 (6th Cir. 1967); Tyree v. New York C. R. Co., 382 F.2d 524 (6th Cir. 1967)

## INSTRUCTION 71-3 ROLE OF THE JURY[158]

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nor is what I may have said—or what I may say in these instructions—about a fact issue evidence. In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record. Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the (plaintiff/defendant) has proven his case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party.

---

[158] Matthew Bender, Modern Federal Jury Instructions, Form 71-3

INSTRUCTION 75-4 UNCALLED WITNESS EQUALLY AVAILABLE[159]

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify, and one or more of the attorneys has referred to their absence from the trial. I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses. Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified had they been called. Their absence should not affect your judgment in any way.

---

[159] Matthew Bender, Modern Federal Jury Instructions, Form 75-4

## INSTRUCTION 76-1 WITNESS CREDIBILITY[160]

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

It must be clear to you by now that you are being called on to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. (*If applicable:* It must also be obvious to you that both sides cannot be true and this is where you play your role as jurors.) In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies? You watched each witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified, the accuracy of the witness's memory, the witness's candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

---

[160] Matthew Bender, Modern Federal Jury Instructions, Form 76-1

<u>INSTRUCTION 76-5 IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS</u>[161]

You have heard evidence that at some earlier time the witness has said or done something that counsel argues is inconsistent with the witness's trial testimony.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

---

[161] Matthew Bender, Modern Federal Jury Instructions, Form 76-5

<u>INSTRUCTION 74-3 JUDICIAL NOTICE</u>[162]

      I have taken judicial notice of certain facts which are not subject to reasonable dispute. I have accepted these facts to be true, even though no direct evidence has been introduced proving them to be true. You are required to accept these facts as true in reaching your verdict.

---

[162] Matthew Bender, Modern Federal Jury Instructions, Form 74-3 Third Circuit Model Civil Jury Instruction 2.2; Fifth Circuit Pattern Civil Jury Instruction 2.4; Seventh Circuit Pattern Civil Jury Instruction 2.06; Eighth Circuit Civil Jury Instruction 2.04; Ninth Circuit Model Civil Jury Instruction 2.3; Eleventh Circuit Pattern Civil Jury Instructions, Trial Instruction 2.5)

<u>INSTRUCTION 74-11 SUMMARIES AND CHARTS ADMITTED AS EVIDENCE</u>[163]

      The Rubard Defendants have presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

---

[163] Matthew Bender, Modern Federal Jury Instructions, Form 74-11
)

<u>INSTRUCTION 75-8 PRESUMPTIONS – REBUTTABLE PRESUMPTION DEFINED</u>[164]

You have heard arguments by counsel which call on you to make certain presumptions.

What is a presumption? A presumption requires you to find one fact from the existence of another fact. (*If applicable:* In this case, for example, the law presumes that if one party has proved to your satisfaction that a letter was placed in an envelope which was properly addressed, stamped, sealed and deposited in the mails that the letter was actually delivered to the person to whom it was addressed.)

Before you may find the presumed fact to exist, you must, therefore, determine whether the underlying or basic fact (*e.g.,* the mailing) has been proved. Only if you find the basic fact to exist will the presumption operate to require you to find that the presumed fact (*e.g.,* the delivery) also was proved.

One word of caution. The mere existence of a presumption never shifts the burden of proof. In this case, even if you find the basic fact that compels you to find the presumed fact, the burden of proof still remains on Stanacard to prove all the elements of its claim. The presumptive fact, therefore, would only be a circumstance to be considered along with all of the other circumstances in this case in deciding the issue of liability.

---

[164] Matthew Bender, Modern Federal Jury Instructions, Form 75-8

<u>INSTRUCTION 78-1 RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY;
COMMUNICATIONS WITH COURT</u>[165]

You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read back to you, may also request that. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony—in fact any communication with the court—should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

---

[165] Matthew Bender, Modern Federal Jury Instructions, Form 78-1

<u>INSTRUCTION 76-4 DISCREPANCIES IN TESTIMONY</u>[166]

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

---

[166] Matthew Bender, Modern Federal Jury Instructions, Form 76-4

<u>INSTRUCTION 71-4 JUROR OATH</u>[167]

     In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

---

[167] Matthew Bender, Modern Federal Jury Instructions, Form 71-4

## INSTRUCTION 71-7 REPRIMAND OF COUNSEL FOR MISCONDUCT[168]

During the course of the trial, I may have had to admonish or reprimand an attorney because I did not believe what he was doing was proper. You should draw no inference against him or his client. It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks and to reprimand counsel when I think it is necessary. But you should draw no inference from that. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

In fact, in this case, I would like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients and for work well done.

Your verdict should be based on the facts as found by you from the evidence and the law as instructed by the court.

---

[168] Matthew Bender, Modern Federal Jury Instructions, Form 71-7 Seventh Circuit Pattern Civil Jury Instruction 2.14)

<u>INSTRUCTION 75-1 INFERENCE DEFINED</u>[169]

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

---

[169] Matthew Bender, Modern Federal Jury Instructions, Form 75-1

<u>INSTRUCTION 76-10 CONFLICTING EXPERT TESTIMONY</u>[170]

You have heard testimony of two witnesses who were called by each side to give their opinion about whether [insert issue].

The witnesses who testified in this case did so in order to assist you in reaching a decision on the issue of [insert issue].

The testimony of these witnesses is in conflict. They disagree. You must remember that you are the sole trier of the facts and their testimony relates to a question of fact—that is, [insert fact in issue]; so, it is your job to resolve the disagreement.

The way you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, because they gave their opinions, you should consider the soundness of each opinion, the reasons for the opinion, and the witness's motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence. You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment, and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

---

[170] Matthew Bender, Modern Federal Jury Instructions, Form 76-10

<u>INSTRUCTION 75-3 UNCALLED WITNESS NOT EQUALLY AVAILABLE</u>[171]

You have heard evidence about a witness [*in Fifth Circuit: name of witness*] who was not called to testify. Counsel for Defendants have argued that this witness could have given material testimony in this case, and that Plaintiff was in the best position to produce this witness.

If you find that this witness could have been called as a witness by Plaintiff, and that Plaintiff was in the best position to produce this witness, and that this witness would have given important new testimony, then you are permitted, but not required, to infer that the testimony of this witness would have been unfavorable to Plaintiff.

In deciding whether to draw this inference, you should consider whether this witness's testimony would merely have repeated other testimony and evidence already before you. You may also consider whether the Plaintiff had a reason for not calling this witness that was explained to your satisfaction.

Any inference you decide to draw should be based on all of the facts and circumstances in this case.

---

[171] Matthew Bender, Modern Federal Jury Instructions, Form 75-3

<u>INSTRUCTION 75-7 PARTY'S FAILURE TO PRODUCE EVIDENCE</u>[172]

You have heard testimony about evidence which has not been produced. Counsel for the Rubard Defendants have argued that this evidence was in Stanacard's control and would have proven facts material to the matter in controversy.

If you find that Stanacard could have produced the evidence, and that the evidence was within its control, and that this evidence would have been material in deciding among the facts in dispute in this case, then you are permitted, but not required, to infer that the evidence would have been unfavorable to Stanacard.

In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether Stanacard had a reason for not producing this evidence that was explained to your satisfaction. Again, any inference you decide to draw should be based on all of the facts and circumstances in this case.

---

[172] Matthew Bender, Modern Federal Jury Instructions, Form 75-7

<u>INSTRUCTION 75-5 INFERENCE FROM ASSERTION OF PRIVILEGE AGAINST SELF-INCRIMINATION</u>[173]

You have heard representative of Plaintiff decline to answer certain questions on the grounds of his or her <u>*Fifth Amendment*</u> privilege against self-incrimination.

The <u>*Fifth Amendment of the United States Constitution*</u> affords every person the right to decline to answer any questions if he or she believes that the answers may tend to incriminate them. However, in civil cases, you are permitted, but not required, to draw the inference that the withheld information would have been unfavorable to Plaintiff.

Any inference you may draw should be based on all of the facts and circumstances in this case as you may find them.

---

[173] Matthew Bender, Modern Federal Jury Instructions, Form 75-5

## INSTRUCTION 74-13 INTERROGATORIES[174]

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

(*If applicable:* One cautionary word on this subject: while you may consider the interrogatory answers as evidence against the party who gave the answers, you may not consider the answers against any other party, nor may you consider the answers as evidence against the party who posed the interrogatory questions. You may only consider the interrogatory answer as evidence against the party who gave the answer.)

---

[174] Matthew Bender, Modern Federal Jury Instructions, Form 74-13

INSTRUCTION 78-9 SPECIAL VERDICT[175]

I have prepared a special verdict form for you to use in recording your decision. The special verdict form is made up of questions concerning the important issues in this case. These questions are to be answered "yes" or "no." Your answers must (be unanimous and must) reflect the conscientious judgment of each juror. You should answer every question (except where the verdict form indicates otherwise).

---

[175] Matthew Bender, Modern Federal Jury Instructions, Form 78-9

## INSTRUCTION 78-7 GENERAL VERDICT FORM[176]

I have prepared a general verdict form for you to use in recording your decision. On the form, there are spaces to indicate your verdict on each of the plaintiff's claims against the defendant (and each of the defendant's counterclaims against the plaintiff). Remember, each verdict must (be unanimous and must) reflect the conscientious judgment of each juror. You should return a verdict on each claim (and on each counterclaim).

---

[176] Matthew Bender, Modern Federal Jury Instructions, Form 78-7

### INSTRUCTION 78-8 GENERAL VERDICT ACCOMPANIED BY ANSWERS TO INTERROGATORIES[177]

I have prepared two forms for you to use in recording your decisions. The first is a general verdict form. On this form, there are spaces to indicate your verdict on each of the plaintiff's claims against the defendant (and each of the defendant's counterclaims against the plaintiff). You should return a verdict on each claim (and on each counterclaim).

The second form contains interrogatories, or written questions about some of the issues in this case. These questions are to be answered "yes" or "no." You should answer every question on this second form (except where the form indicates otherwise).

Your general verdict and your answers to the special questions must (be unanimous and must) reflect the conscientious judgment of each juror.

---

[177] Matthew Bender, Modern Federal Jury Instructions, Form 78-8

<u>INSTRUCTION 78-6 RETURN OF VERDICT</u>[178]

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that ( *if applicable:* each of) you should be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

---

[178] Matthew Bender, Modern Federal Jury Instructions, Form 78-6

<u>INSTRUCTION 78-3 DUTY TO DELIBERATE/UNANIMOUS VERDICT</u>[179]

You will now return to decide the case. In order to prevail, the plaintiff (*or* defendant) must sustain his or her burden of proof as I have explained to you with respect to each element of the complaint (*or* affirmative defense or counterclaim). If you find that the plaintiff has succeeded, you should return a verdict in his or her favor on that claim. If you find that the plaintiff failed to sustain the burden on any element of the claim, you should return a verdict against the plaintiff. Similarly, if you find that the defendant has failed to sustain his or her burden with respect to any element of the defendant's affirmative defense *or* counterclaim, you must return a verdict against the defendant on that defense or claim.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

---

[179] Matthew Bender, Modern Federal Jury Instructions, Form 78-3

<u>INSTRUCTION 78-13 RETURN TO DELIBERATIONS AFTER POLLING</u>[180]

It appears from the answers given during the polling of the jury that your verdict is not ( *e.g.* , unanimous). As I previously instructed, the court cannot accept a verdict unless it is ( *e.g.* , unanimous). I must therefore ask that you return to the jury room and continue your deliberations. The instructions which I previously gave you will apply. Specifically, I remind you that you should discuss and consider the evidence; listen to the arguments of your fellow jurors; present your individual views and consult with one another. You should not hesitate to change your views if you are convinced they are erroneous; however, you should not surrender a conscientiously held conviction simply because you may be outnumbered or merely in order to reach a verdict.

---

[180] Matthew Bender, Modern Federal Jury Instructions, Form 78-13

## INSTRUCTION 78-12 PARTIAL VERDICT – MULTIPLE PARTIES[181]

It is the desire of the court and of all the parties that you return a verdict on each of the plaintiffs' claims against each of the defendants (and each of the defendants' counterclaims against each of the plaintiffs), if you can do so without violating your individual consciences.

However, if, after conscientious deliberations, you are only able to agree on a verdict concerning some of the parties (*or* some of the claims), you may return a verdict concerning only those parties (*or* those claims).

---

[181] Matthew Bender, Modern Federal Jury Instructions, Form 78-12

INSTRUCTION 78-4 DEADLOCK CHARGE: REACHING AGREEMENT[182]

This case is important for the plaintiff and for the defendant. Both parties, as well as the court, have expended a great deal of time, effort and resources in seeking a resolution of this dispute.

It is desirable if a verdict can be reached, but your verdict must represent the conscientious judgment of each juror.

While you may have honest differences of opinion with your fellow jurors during the deliberations, each of you should seriously consider the arguments and opinions of the other jurors. Do not hesitate to change your opinion if, after discussion of the issues and consideration of the facts and evidence in this case, you are persuaded that your initial position is incorrect. However, I emphasize that no juror should vote for a verdict unless it represents his conscientious judgment.

( *If given as a supplementary charge:* You are reminded that the plaintiff, to prevail, must prove each element of his claim(s) in accordance with the standards, that I explained to you before. Likewise, the defendant, to prevail on his counterclaim(s), must prove each element in accordance with the standards I described before.)

You are not partisans. You are judges–judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

---

[182] Matthew Bender, Modern Federal Jury Instructions, Form 78-4